No. 2--03--0194

IN THE 

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

OGDEN CHRYSLER PLYMOUTH, INC., ) Appeal from the Circuit Court of Du Page

) County.

Plaintiff-Appellee and )

Cross-Appellant, ) 

)

v. ) No. 01--MR--1000
 

) 

GLEN L. BOWER, as Director of The ) 

Department of Revenue, and THE )

DEPARTMENT OF REVENUE, )

) Honorable

Defendants-Appellants and ) Edward R. Duncan, Jr.,

Cross-Appellees. ) Judge, Presiding.

JUSTICE CALLUM delivered the opinion of the court: 

Following an audit of plaintiff's, Ogden Chrysler Plymouth, Inc.'s (Ogden's), records for the period January 1996 through September 1998, the Department of Revenue (Department) concluded that Odgen's receipt of payments from DaimlerChrysler Motors Corporation (Chrysler) pursuant to Chrysler's Employee/Retiree New Vehicle Purchase/Lease Program (Program) should be included in Ogden's gross receipts and subject to the retailers' occupation tax (ROT) (35 ILCS 120/1, 2--10 (West 2002)).  The Department issued a notice of tax liability, proposing to assess $3,490
 in tax plus interest.  Ogden timely protested.  Subsequently, both parties filed cross-motions for summary judgment, and no hearing was held.  An administrative law judge (ALJ) recommended granting Ogden's motion and denying the Department's motion.  The Director of the Department (Director) rejected the ALJ's recommendation and granted the Department's motion and denied Ogden's motion.  The Director found that Chrysler's payments constituted gross receipts, and he rejected Ogden's request for attorney fees based upon its argument that the Department enacted an invalid rule through private letter ruling (PLR) pronouncements. 

Ogden sought judicial review of the Director's decision.  35 ILCS 120/12 (West 2002).  The circuit court reversed on the gross receipts issue and affirmed the Director's decision with respect to Ogden's request for attorney fees.

The Director and the Department appeal the circuit court's order addressing the gross receipts issue.  Ogden cross-appeals that part of the circuit court's order affirming the Director's denial of attorney fees.  
Thus, we must first decide whether payments received by Ogden from Chrysler as part of a Chrysler employee incentive program constitute "gross receipts" within the meaning of sections 1 and 2--10 of the Retailers' Occupation Tax Act (Act) (35 ILCS 120/1, 2--10
 (West 2002)) 
and are therefore subject to the ROT.  The second issue we must decide is whether the Department failed to follow proper rulemaking procedures in enacting its rule on employee purchase programs, thereby entitling Ogden to attorney fees.  We reverse the circuit court's ruling on the first issue and affirm with respect to the second issue.

I.  BACKGROUND

Chrysler dealers who are parties to a valid sales and service agreement with Chrysler are eligible to participate in the Program.  Under the Program, active or retired Chrysler employees and their family members may purchase or lease Chrysler vehicles at a reduced price.  A participating dealer must sell or lease a vehicle at the employee purchase price listed on the factory invoice.  During the relevant period, Ogden was a participating dealer in the Program.  

The Program further provides that an eligible purchaser cannot negotiate the price with a dealer, and the dealer cannot charge the purchaser or lessee any preparation, documentation, delivery, or handling fees.  A dealer is required to show a copy of the factory invoice to the eligible customer so that he or she can verify the employee purchase price.  A regular customer may not review the factory invoice.

In exchange for participating in the Program, with respect to each eligible sale,
 the dealer receives from Chrysler 6% of the employee purchase price, plus $75.  At the time a dealer purchases a vehicle from Chrysler, neither the dealer nor Chrysler is able to determine if the vehicle will be sold under the Program.  Payments are processed by electronic funds transfer or as a reduction in the amount the dealer owes Chrysler as listed on the monthly dealer parts account.  Chrysler does not inform its employees or their family members about the dealer payment.  Eligible customers receive all consumer rebates in addition to the reduced purchase price provided under the Program.

The payment made by Chrysler to the dealer does not affect the employee purchase price.  For its accounting purposes, Ogden treats the payments from Chrysler under the Program as a reduction in its cost of goods sold.  However, Ogden treats general consumer rebates as a receipt from the sale of an automobile.

Following a Department audit, the Department issued Ogden a notice of tax liability for failure to pay ROT on payments it received between January 1996 and September 1998 from Chrysler for the sale or lease of several Chrysler vehicles.  The Department alleged that Ogden owed approximately $3,490 in past-due tax and interest.

During the administrative proceedings, both Ogden and the Department agreed that there were no disputed issues of material fact that required a fact-finding hearing.  Accordingly, both parties filed cross-motions for summary judgment, and no hearing was held.  The ALJ recommended that summary judgment be entered in favor of Ogden.  However, the Director disagreed and, on September 11, 2001, entered summary judgment for the Department and against Ogden.

The Director found that the Act and the Department's regulations define "gross receipts" to include all consideration received by the seller and that the definitions focus on how much a seller receives from a particular sale, but do not require that consideration be limited to that tendered by the purchaser.  Relying on case law, the Director also found that all of the consideration that a seller receives should be included in the seller's taxable gross receipts if all of the consideration received is directly related to a particular sale.  He stated that Ogden's accounting treatment of the payments is not relevant for purposes of the ROT.  Finally, the Director noted that Department rulings have consistently held that payments from a manufacturer to a dealer are taxable under the Act.  He explained, however, that his decision was not based on the rulings or on a recently proposed regulation that addressed reimbursements or rebates received by a seller.  Rather, the Director explained that he relied only on the Act and case law.

Ogden sought administrative review, and, on January 17, 2003, the circuit court reversed the Director's decision, finding that Chrysler's payments were not taxable under the Act because the consideration is limited to that given by the purchaser.  The court also found that Ogden was not entitled to attorney fees.

The Department appeals, requesting that this court affirm the Director's decision that Chrysler's payments were gross receipts subject to the ROT.  Ogden cross-appeals, arguing that the circuit court erred in denying its request for attorney fees.

II.  STANDARD OF REVIEW

Under the Administrative Review Law (735 ILCS 5/301 
et
 
seq.
 (West 2002)), we review the Department's final decision and not the circuit court's ruling.  
Blessing/White, Inc. v. Zehnder
, 329 Ill. App. 3d 714, 726 (2002).  The standard of review applied by this court turns on the proper characterization of the questions presented.  The parties disagree as to whether the gross receipts issue presents a question of law subject to 
de
 
novo
 review or a mixed question of law and fact that is subject to review under the clearly erroneous standard.  See 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205 (1998).  
 

Relying on recent case law, defendants argue that the clearly erroneous standard applies.  Ogden contends that 
de
 
novo
 review is appropriate because the facts in this case are undisputed.  It distinguishes the cases relied on by defendants, arguing that, in those cases, the administrative agency was required to draw additional factual findings from the undisputed facts, a step it contends the Department did not take here.  Furthermore, Ogden argues that, because both the ALJ and the Director could not agree on the meaning of the terms "gross receipts" and "consideration," the agency's legal conclusions are not entitled to any deference.  We conclude that the clearly erroneous standard applies.

In 
City of Belvidere
, the supreme court held that whether a city's unilateral decision to contract with a private company to provide paramedic services to the city's residents affected "wages, hours, and other conditions of employment" (5 ILCS 315/7 (West 1994)) so as to constitute a mandatory subject of collective bargaining presented a mixed question of law and fact.  
City of Belvidere
, 181 Ill. 2d at 205.  The court explained that the agency's finding was in part factual because it involved considering whether the facts supported a finding that the city's decision affected wages, hours, and other conditions of employment.  The case also concerned a question of law because the phrase "wages, hours, and other conditions of employment" was a legal term requiring interpretation.  

Similarly, in 
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380, 392 (2001), the supreme court held that 
whether delivery drivers were "independent contractors" (820 ILCS 405/212 (West 2000)) within the meaning of the unemployment insurance statute presented a mixed question of law and fact.  
The court explained that the agency's decision was in part factual because it involved considering whether the facts supported the agency's finding that the drivers were employees and not independent contractors under a provision of the statute.  Also, the agency's decision concerned a question of law because the statutory requirements for independent contractor status were comprised of legal terms and concepts requiring interpretation.  Accordingly, the court applied the clearly erroneous standard of review.  
AFM Messenger Service, Inc.
, 198 Ill. 2d at 395.  

In 
Swank v. Department of Revenue
, 336 Ill. App. 3d 851, 855 (2003), this court utilized the 
de
 
novo
 standard of review to determine whether taxpayers' properties were "used with a view to profit" (35 ILCS 200/15--35 (West 2000)) in a property tax exemption case.  However, we applied the clearly erroneous standard in determining whether the plaintiffs were entitled to receive exemptions under the statutory provision.  
Swank
, 336 Ill. App. 3d at 861-62.  We explained that the first issue involved a question of law because we were asked to construe a statutory provision.  Specifically, we assessed whether the "used with a view to profit" language in one provision of the property tax statute modified another section.  However, in assessing whether the plaintiffs were entitled to receive property tax exemptions, we relied on 
City of Belvidere
 and 
AFM Messenger Service, Inc.
 in concluding that the issue involved a mixed question of law and fact.  
Swank
, 336 Ill. App. 3d at 861-62.  We explained that the issue was in part factual because it required the administrative agency to determine whether the facts indicated that the property was used for educational purposes and whether it was "used with a view to profit."  The issue also involved a legal question because it required the agency to construe the scope of the exemption, which was statutorily defined and required interpretation.  

Similarly, in 
Du Page County Board of Review v. Department of Revenue
, 339 Ill. App. 3d 230 (2003), this court addressed whether a house for a church's schoolteachers was exempt from taxation under the property tax statute.  We noted that the holdings in 
AFM Messenger Service, Inc.
 and 
City of Belvidere
 set forth a new rule: whether given historical facts satisfy an established legal standard is a mixed question of law and fact, and an agency's resolution of that question must stand unless it is clearly erroneous.  We determined that the exemption issue involved a mixed question of law and fact, and, therefore, we applied the clearly erroneous standard.  
Du Page County Board of Review
, 339 Ill. App. 3d at 234-35.  

Given this precedent, we conclude that whether Chrysler's payments constitute gross receipts that are subject to the ROT involves a mixed question of law and fact.  The issue, in part, involves legal questions of statutory interpretation, such as whether Chrysler's payments constitute gross receipts.  The issue is also in part factual because it involves determining whether the facts, such as the structure of the Program, support the Director's finding that Chrysler's payments constitute part of the consideration for the relevant transactions.

Under the clearly erroneous standard, a court gives somewhat less deference to agency findings than it would if the decision related solely to a question of fact because the decision is "based on fact-finding that is inseparable from the application of law to fact."  
Carpetland U.S.A., Inc. v. Department of Employment Security
, 201 Ill. 2d 351, 369 (2002).  We will reverse the agency's decision only if we are " 'left with the definite and firm conviction that a mistake has been committed.' "  
AFM Messenger Service, Inc.
, 198 Ill. 2d at 395, quoting 
United States v. United States Gypsum Co.
, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948); see also 
Du Page County Board of Review
, 339 Ill. App. 3d at 234-35 (new test may not make any practical difference; clearly erroneous standard is an ill-defined test that is essentially reducible to reasonableness).  

Turning to Ogden's cross-appeal, whether several Department pronouncements constitute a rule presents a question of law.  We review 
de
 
novo
 legal questions.  
Carpetland U.S.A., Inc.
, 201 Ill. 2d at 369.  

III.  ANALYSIS

A.  Defendants'
 Appeal

Defendants argue that the Director correctly found that Ogden must pay the ROT on all the consideration it received from the sale of vehicles under the Program, regardless of whether the consideration came from the purchasers or Chrysler.  They contend that Chrysler's payments were tied to specific vehicle sales and therefore constitute gross receipts for which the ROT is due.

The Act imposes a tax--the ROT--on the gross receipts of sellers of tangible personal property at retail.  35 ILCS 120/2 (West 2002); 
Soho Club, Inc. v. Department of Revenue
, 269 Ill. App. 3d 220, 228 (1995).  Although the tax is calculated on the taxpayer's gross receipts
, the tax is on the business of selling and not the sale itself.  
Soho Club, Inc.
, 269 Ill. App. 3d at 229.    

The ROT is assessed at a rate of 6.25% of the gross receipts from sales of tangible personal property made in the course of business.  35 ILCS 120/2--10 (West 2002).  The term "gross receipts" is defined, in relevant part, as "the total selling price or the amount of such sales."  35 ILCS 120/1 (West 2002).  The Department's regulations define "gross receipts" as "all the consideration actually received by the seller, except traded-in tangible personal property."  86 Ill. Adm. Code §130.401 (2002). 

The Act defines the "selling price" or the "amount of sale," in relevant part, as: 

"the consideration for a sale valued in money whether received in money or otherwise *** and shall be determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or any other expense whatsoever."  35 ILCS 120/1 (West 2002).  

In 
Keystone Chevrolet Co. v. Kirk
, 69 Ill. 2d 483, 488 (1978), the supreme court held that an automobile manufacturer's rebate paid to an automobile purchaser did not affect the automobile dealer's ROT liability.  In that case, the manufacturer's program paid a cash rebate to the purchasers of certain new vehicles.  The court noted that neither the Act nor its regulations permitted a seller to deduct from its gross receipts an amount paid by a third party directly to the purchaser, even though the purpose of the payment was to reimburse the purchaser for part of the purchase price.  It further noted that the seller's gross receipts remained the same whether or not a rebate was paid by someone not directly involved in the sale.

Based on the statutory provisions and regulations cited above and the court's holding in 
Keystone Chevrolet Co.
, defendants' argument appears to have merit.  The Act's definition of "gross receipts" refers to the "total selling price" (35 ILCS 120/1 West 2002)), and the Department's regulations refer to "
all
 the consideration actually received by the seller" (emphasis added) (86 Ill. Adm. Code §130, 401 (2002)).  These provisions do not limit gross receipts or consideration to that received only from the purchaser.  

Ogden contends, however, that the language should be read in a more limited fashion.  It argues that the Chrysler payments do not constitute consideration because they are not part of the bargain or exchange between Ogden and an eligible purchaser.  Rather, they are two independent and unrelated transactions.  We find no merit in Ogden's argument.  The transactions are not independent and unrelated, because the Chrysler payments are triggered by a purchase under the Program.  We find support for our conclusion, as did the Director, in 
Chet's Vending Service, Inc. v. Department of Revenue
, 71 Ill. 2d 38 (1978)
.

In 
Chet's Vending Service, Inc.
, the supreme court held that certain subsidy and guarantee payments paid by companies to a food caterer were not includable in the caterer's gross receipts.  
Chet's Vending Service, Inc.
, 71 Ill. 2d at 42-43.  In that case, the taxpayer catered food and beverages to employees at industrial locations.  The taxpayer had several types of contracts with the industries it served.  Under one arrangement, the taxpayer paid the ROT on all monies it received from the sales to employees, but, in addition to the receipts from sales, it also received a fixed monthly subsidy from the employer.  Under another type of contract, the taxpayer rendered to the employer a statement of its sales and costs and, if the receipts did not cover the taxpayer's costs, the employer made up the difference with a guarantee payment.  The court stated that there was no basis for relating any portion of the fixed fee or guarantee payment to any individual sale as part of the selling price.  It noted that it was irrelevant
 whether the payments enabled the taxpayer to reduce the cost of the food and beverages that it sold to the employees or to guarantee it a profit from its operations. 
 Reading what it termed the "clearly defined" terms in the statute, the court held that the payments were not includable in the taxpayer's gross receipts.  
Chet's Vending Service, Inc.
, 71 Ill. 2d at 43.  

Ogden points out that the court in 
Chet's Vending Service, Inc.
 noted that it was dealing with two separate transactions--the sales to employees, followed by a subsidy payment by the employer--and that it would have to treat the food and beverage sales as a single sale to both the employer and employee in order to find that the payments in question were taxable gross receipts.  Ogden argues that here there are also two separate, independent transactions: the sale of a vehicle by Ogden to an eligible purchaser, followed by a payment by Chrysler to Ogden.  Ogden contends that its sale to a purchaser is supported by the consideration provided by the purchaser  and is not affected by  the subsequent payments made by Chrysler to Ogden in an independent transaction. 

We reject Ogden's argument.  In reaching its decision, the 
Chet's Vending Service, Inc.
 court noted that each sale at the industrial locations was a separate transaction.  However, it also noted that the evidence showed that there was no basis for relating any portion of the employer's payments to any individual sale.  The court refused to aggregate the sales during a calendar month with the sums paid by the employer because that would have gone beyond the scope of the statutory language.  Here, we are not presented with the same issue.  The transactions are not independent.  Each purchase is tied to a specific payment from Chrysler to Ogden, and the payment amount from Chrysler is tied to a specific purchase price.  Contrary to Ogden's assertion, the fact that the purchaser is not aware of the payments is of no import, as it does not act to separate the purchase from the payment.
  
Keystone Chevrolet Co.
, the statute, and the regulations quoted above focus on amounts received by the seller.  The purchaser is not the focus in analyzing whether certain monies constitute gross receipts subject to the ROT.  

Furthermore, contrary to Ogden's assumption, each transaction involves not only Ogden and the purchaser, but also Chrysler.  This is so because, but for Ogden's agreement to sell or lease vehicles under the Program, Ogden would not receive the payments from Chrysler.  Thus, each Chrysler payment is a bargained-for element of every transaction, albeit between Chrysler and Ogden and not between the purchaser and Ogden.  This difference does not render the Chrysler-Ogden side of each transaction irrelevant in determining ROT liability.  Ogden responds that the payments are in exchange for an intangible property right, 
i.e.
, Ogden's agreement to participate in the Program, and that only tangible personal property is subject to the ROT (35 ILCS 120/2 (West 2002)).  We disagree.  Chrysler's payments are linked to the retail sales of tangible personal property--Chrysler vehicles.

Echoing the Director's finding, 
defendants argue that the fact that Ogden, for its accounting purposes,
 treats the payments from Chrysler as a reduction in the cost of goods sold should not be relevant to the issue of ROT liability.  We agree.
  Ogden's accounting treatment is irrelevant for purposes of determining whether the Chrysler payments are taxable.  See 
Chet's Vending Service, Inc.
, 71 Ill. 2d at 42-43 (whether payments enable the taxpayer to reduce the cost of the products it sells or to guarantee it a profit is wholly irrelevant).  Furthermore, the Act does not permit a retailer to deduct from its gross receipts the cost of the sold goods.  See 35 ILCS 120/1 (West 2002) (gross receipts are calculated "without any deduction on account of the cost of the property sold").  

Next, Ogden argues that defendants confuse a manufacturer rebate or incentive with a consumer rebate or discount coupon.  Ogden contends that consumer rebates or discount coupons are taxable, but that manufacturer rebates or incentives, such as the payments under the Program, are not taxable.  

A Department regulation addressing discount coupons provides that, in cases where a purchaser tenders a discount coupon for which the retailer receives no reimbursement from any source, the amount of the discount is not subject to ROT liability.  In other words, the tax is calculated using the discounted price.  86 Ill. Adm. Code §130.2125(b)(1) (2002).  However, the Department's regulations also provide that, where a retailer grants a purchaser a discount from the selling price based on a discount coupon for which the retailer will receive full or partial reimbursement from a manufacturer or other source, the retailer incurs ROT liability on the receipts received from the purchaser and the amount of any coupon reimbursement.  86 Ill. Adm. Code §130.2125(b)(2)(A) (2002).

In PLR No. 90--0033 (Department of Revenue, Priv. Ltr. Rul. No. 90--0033 (January 29, 1990)
), the Department addressed dealer incentive programs under which automobile manufacturers allowed dealers various alternatives to offering cash rebates to customers.  These included reducing the vehicle price, offering incentives to sales staff, or providing additional advertising.  The Department ruled that, generally, reductions by a manufacturer in its invoice price are not taxable as gross receipts to the dealer. Cash back to the dealer, discounts off of invoice, and additional equipment provided at no additional cost would be nontaxable incentives.
  However, the Department   noted that rebates or cash amounts given to purchasers are included in gross receipts.

Relying on this ruling, Ogden contends that the payments it receives from Chrysler are not consideration for the sales between Ogden and eligible purchasers.  According to Ogden, although it receives a payment, similar to a manufacturer incentive,
 from Chrysler for a vehicle sold under the Program, an eligible purchaser does not tender any coupons to Ogden as part of the sale.  The Chrysler payments never enter into the bargain between Ogden and the eligible purchaser and, therefore, the Chrysler payments cannot be considered part of the transaction between Ogden and the purchaser.  Ogden maintains that the payments reduce the cost of a vehicle to Ogden and are not taxable gross receipts to Ogden.

We reject Ogden's argument.  Although an eligible purchaser does not literally tender any coupons to Ogden when he or she purchases a vehicle under the Program, it can reasonably be interpreted that the purchaser effectively does so when he or she chooses a participating dealer with which to do business and chooses to purchase a vehicle under the Program at a reduced price.  Ogden's receipt of a payment from Chrysler 
under the Program constitutes a reimbursement very similar to that described in section 130.2125(b)(2)(A) because Ogden receives the payment as a result of providing a reduced price to an eligible purchaser.  In this way, the Department's regulations also appear to indicate that Chrysler's payments constitute taxable gross receipts.

 Although not binding on this court (
Union Electric Co. v. Department of Revenue
, 136 Ill. 2d 385, 400 (1990)), several Department rulings are instructive on this issue and suggest the same result.  In one ruling, the Department analyzed an employee discount program strikingly similar to Chrysler's.  Under that program, employees of a vehicle manufacturer could purchase new vehicles at discounted prices.  Following a sale, the factory paid the dealership a commission for its participation in the discount plan.  The Department ruled that, when a seller receives a reimbursement or rebate for a discount, the amount of the reimbursement or rebate is considered part of the seller's gross receipts and is fully taxable.  Department of Revenue, Gen. Info. Ltr. No. 94--0422 (October 5, 1994).
  It noted that a dealer commission is a form of rebate or reimbursement for the discount given to the manufacturer's employees and is fully subject to the ROT.   

Similarly, in another ruling, a manufacturer's employees could purchase its vehicles at a discount through a company program.  The vehicle selling price was determined by the manufacturer.  Following a sale to an employee, the manufacturer paid the dealer a fee for preparing and delivering the vehicle.  The Department ruled that the service fees and commissions paid to the dealerships for the sales of vehicles were part of the dealers' gross receipts and were subject to the ROT.  Department of Revenue, Priv. Ltr. Rul. No. 98--0020 (December 18, 1998).  In a third ruling, the Department, relying on 
Keystone Chevrolet Co.
, ruled that an automobile manufacturer's cash rebate to a dealer is includable in the dealer's gross receipts.  Department of Revenue, Priv. Ltr. Rul. 
No. 89--0126 (February 23, 1989).
  It noted that the source of the receipts did not affect the result, as the tax is assessed on the total gross receipts that the retailer receives.  
Thus, although not binding, the Department's rulings addressing arrangements similar to the Program reach a similar conclusion: that the payments constitute gross receipts subject to the ROT.

Finally, Ogden contends that the Department's position precludes it and other dealers from reimbursing themselves for their ROT expense.  Retailers are permitted to collect a use tax from purchasers to reimburse themselves for their ROT expense.  See 35 ILCS 105/3--45, 8 (West 2002).  According to Ogden, if the payments received from Chrysler are taxable gross receipts, then Ogden cannot reimburse itself because it is not selling any tangible personal property to Chrysler.  In other words, there is no retail sale between Ogden and Chrysler, and therefore, Ogden cannot collect tax on the payments from Chrysler as it can with respect to sales to eligible purchasers.  Ogden argues that this result is contrary to the spirit and intent of the Act and the Use Tax Act (35 ILCS 105/1 
et
 
seq.
 (West 2002)).  

Ogden's argument is unconvincing.  The fact that a seller passes its tax liability on
 to a purchaser is not relevant for purposes of determining the seller's tax liability.  See 
Keystone Chevrolet Co.
, 69 Ill. 2d at 488
 (the retailer has the legal obligation to pay the tax whether or not it collects it from the purchaser);
 
First National Bank of Maywood v. Jones
, 48 Ill. 2d 282, 288 (1971) (the practice of passing the ROT on to the purchaser does not change the character of the tax).  As defendants suggest, Ogden may wish to take this result into account when it considers whether to continue participating in the Program.  

In sum, we conclude that the Director's finding that Chrysler's payments constitute gross receipts for ROT purposes was not clearly erroneous.

B.  Ogden's
 Cross-Appeal

Ogden argues in its cross-appeal that the Department's position on the taxability of employee incentive programs constitutes a rule and that the rule is invalid under the Illinois Administrative Procedure Act (Procedure Act) (5 ILCS 100/1--1 
et
 
seq.
 (West 2002)) because the Department did not comply with the Procedure Act's notice and comment requirements (5 ILCS 100/5--40 (West 2002)) and that, therefore, Ogden is entitled to reasonable attorney fees (5 ILCS 100/10--55(c) (West 2002)). 

Initially, we note that, even though we determined above that Ogden's challenge to the assessment of ROT on Chrysler's payments must fail, we may address Ogden's argument that it is entitled to attorney fees.  See 
Citizens Organizing Project v. Department of Natural Resources
, 189 Ill. 2d 593, 599 (2000) (section 10--55(c) does not require the party seeking litigation expenses to have prevailed on any other aspect of the case).  

The Procedure Act defines a "rule," in relevant part, as "each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy, but does not include *** informal advisory rulings issued under Section 5--150."  5 ILCS 100/1--70(ii) (West 2002).  In adopting rules, administrative agencies must comply with the public notice and comment requirements set forth in  the Procedure Act.  
Sparks & Wiewel Construction Co. v. Martin
, 250 Ill. App. 3d 955, 967 (1993).  Section 10--55(c) of the Procedure Act authorizes the award of attorney fees in any case in which a party has an administrative rule invalidated by a court for any reason, including when an agency exceeds its statutory authority or fails to follow the statutory procedures in the adoption of a rule.  5 ILCS 100/10--55(c) (West 2002).

Ogden argues that the Department has issued a series of PLRs on the subject of employee incentive programs over an extended period of time and that these rulings, in addition to a proposed regulation and the Director's decision, constitute an invalid rule under the Procedure Act.
  Addressing the letter rulings, Ogden asserts that PLRs Nos. 89--0126, 94--0422, and 98--0020 reveal that the Department has been aware of employee incentive programs for at least 11 years and, despite the absence of relevant statutory or case law, has never adopted a final regulation on the issue. Ogden  suggests that the rulings reflect an established Department policy on employee incentive programs that rises to the level of an agency statement of general applicability. 

Private letter rulings are informal rulings, opinions, or letters issued by the Department in response to an inquiry or request for an exemption.  
Union Electric Co.
, 136 Ill. 2d at 399
.
  Whenever a PLR contains any policy of general applicability, the Department is required to adopt such policy as a rule.  
Union Electric Co.
, 136 Ill. 2d at 400.
  However, not all statements of agency policy constitute the adoption of a rule requiring compliance with the 
Procedure Act
.  
Kaufman Grain Co. v. Director of the Department of Agriculture
, 179 Ill. App. 3d 1040, 1047 (1988).  When an agency interprets statutory language as it applies to a particular set of facts, adjudicated cases are a proper alternative method of announcing agency policies.  
Kaufman Grain Co.
, 179 Ill. App. 3d at 1047.  The choice between rulemaking and adjudication lies within the agency's informed discretion.  
Boffa v. Department of Public Aid
, 168 Ill. App. 3d 139, 145-46 (1988).  

In 
Sparks & Wiewel Construction Co.
, 250 Ill. App. 3d at 968, the court held that the Department of Labor did not engage in rulemaking when it determined that a supplier's truck drivers who unloaded material on a construction site were covered under the Prevailing Wage Act (Ill. Rev. Stat. 1991, ch. 48, par. 39s--0.01 
et
 
seq.
) (now 820 ILCS 130/0.01 
et
 
seq.
 (West 2002)).  In interpreting the statute, the agency deemed authoritative an Attorney General opinion that addressed the topic.  The parties had agreed that the agency had not adopted a policy including material deliverymen in the coverage of the statute, but had merely applied the statute to the facts.  The court noted that the mere fact that the agency had interpreted the statute more broadly than the language allowed did not indicate that the agency had engaged in rulemaking.  

Ogden attempts to distinguish 
Sparks & Wiewel Construction Co.
 by arguing that the policy in that case was announced in only one Attorney General opinion, whereas, in this case, the Department has announced its position in a series of letter rulings over a period of several years. Ogden also points out that, here, the Director stated in his decision that the Department's rulings have shown a consistent approach to the issue.  However, Ogden's argument fails.  

The fact that the Department has taken a similar position with respect to employee incentive programs in two or even three PLRs does not require enactment of a rule codifying its position.  The Department here was interpreting a statutory term--gross receipts--in the context of a particular set of facts.  It was permitted to do so without enacting regulations.  
Kaufman Grain Co.
, 179 Ill. App. 3d at 1047.
  We note that, contrary to Ogden's assertion, PLR No. 89--0126 does not address an employee incentive program.  In that ruling, the Department addressed a manufacturer rebate paid to a dealer.  Thus, the Department has issued only two rulings in recent years directly addressing these programs.  We also point out that the Department cautioned in PLR No. 90--0033 that it was providing "general advice" and that the tax results might "vary depending upon the structure of a particular transaction." 
 The Department's caution is a factor that weighs against finding that its rulings on employee incentive programs constitute a policy of general applicability, as there appears to be much variation in the structures of these plans.

The cases upon which Ogden relies are distinguishable.  In 
Sleeth v. Department of Public Aid
, 125 Ill. App. 3d 847, 853 (1984), an agency required persons who had been terminated from certain benefits, after being found "not disabled" by the Social Security Administration, to submit proof of disability to the local county office within 14 days of filing their notices of appeal.  The court concluded that the rule was invalid because the agency did not adopt it consistent with statutory procedures.  The court held that the 14-day rule affected private rights and procedures available to persons outside the agency and, therefore, constituted a rule.  
Sleeth
, 125 Ill. App. 3d at 853. 

Sleeth
 is distinguishable because it involved a change to an agency procedure that affected the rights of potential claimants, whereas the issue in this case involves the interpretation of a statutory term and its application to a particular set of facts.  Other cases relied on by Ogden also fail to support its argument for the same reason.  See 
Kaufman Grain Co.
, 179 Ill. App. 3d at 1047-48 (agency's adoption of a policy whereby it adjudicated grain quality disputes among producers, dealers, and warehouses constituted an invalid rule and, therefore, complaining party was entitled to reasonable attorney fees);  
Hernandez v. Fahner
, 135 Ill. App. 3d 372, 380-83 (1985) (agency's policy of requiring proof of a crime victim's immigration status or citizenship affected the private rights and procedures available to individuals outside the crime victim division of the Attorney General's office and, therefore, constituted an agency statement of general applicability and was a rule)
.  

Ogden next argues that the Department's issuance of a proposed regulation would modify the definition of "gross receipts" constitutes an acknowledgment by the Department that a regulation is necessary to enforce its position on employee incentive programs.  Ogden also asserts that the Department acknowledged in its announcement that the proposed regulation would codify a long-standing agency position when a seller receives a reimbursement or rebate from any source.  

On December 29, 2000, the Department published a proposed regulation that would add the following language to the definition of "gross receipts" contained in section 130.401 of the Department's regulations (86 Ill. Adm. Code §130.401 (2002)): 

"If the seller receives a reimbursement or rebate from any source, the amount of that reimbursement or rebate is considered part of the gross receipts received by the seller and is fully taxable.  For example, when an automobile dealer sells an automobile for $20,000 to a customer and takes a trade-in valued at $10,000, the automobile dealer's gross receipts from the sale upon which tax must be calculated are $10,000.  It does not matter whether the customer paid the entire $10,000 or whether the customer paid $7,000 and the automobile manufacturer paid the remaining $3,000 under a rebate program.  In both situations, the automobile dealer's gross receipts from the sale are $10,000 and that is the figure upon which the tax calculation must be based."  24 Ill. Reg. 19039 (proposed December 29, 2000).

In its description of the proposed regulation, the Department stated that its rulemaking: 

"codifies the long-standing position of the Department, as evidenced in letter rulings, that when a seller receives a reimbursement or rebate from any source, the amount of that reimbursement or rebate is considered part of the gross receipts received by the seller and is fully taxable.  This regulation is part of the Department's ongoing effort to update its regulations by including policies expressed in letter rulings."  24 Ill. Reg. 19030 (proposed December 29, 2000).

We find no merit in Ogden's argument that the very act of proposing the regulation is the Department's acknowledgment that a regulation is necessary to enforce its position in this case.  When an agency proposes new regulations, it does not necessarily follow that they are issued in order to validate the agency's enforcement efforts in that area.
  This is especially true in this case because, as is evident from the proposed language, the regulation does not even directly address employee benefit arrangements such as Chrysler's Program or those addressed in the PLRs discussed above.  Instead, it deals with reimbursements or rebates paid to dealers.  It is certainly conceivable, as the Department cautioned in PLR No. 90--0033,
 that an incentive program could be structured such that the tax results described in the proposed regulation would not apply to that arrangement.  Indeed, by not directly addressing employee incentive programs in its proposed regulation, it is highly probable that the Department has chosen to continue its enforcement efforts in that area through PLRs or adjudicated cases, both of which are proper mechanisms.  Furthermore, Ogden has not adequately addressed how the Department's statement that it seeks to codify its "long-standing position" serves as a concession that the policy is one of general applicability.  As discussed above, the case law appears to indicate otherwise.  Accordingly, we conclude that, in issuing the proposed regulation,
 the Department
 did not acknowledge that it had in place a policy of general applicability that had never been adopted pursuant to proper rulemaking procedures.

In sum, we conclude that the Department, through its PLRs and other pronouncements, did not
 engage in invalid rulemaking.  It follows that Ogden is not entitled to attorney fees.

IV.  CONCLUSION

For the foregoing reasons, the circuit court of Du Page County's order reversing the Director's decision and finding that Chrysler's payments did not constitute gross receipts is reversed, and its denial of attorney fees is affirmed.

Affirmed in part and reversed in part.

HUTCHINSON and BYRNE, JJ., concur.