No. 3-06-0278

Filed April 19, 2007.
IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| THE BOARD OF EDUCATION, JOLIET TOWNSHIP HIGH SCHOOL DISTRICT NO. 204, County of Will, State of Illinois, a body politic, | ) ) ) ) ) | Appeal from the Circuit Court for the 12th Judicial Circuit Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| THE BOARD OF EDUCATION, LINCOLN WAY COMMUNITY HIGH SCHOOL DISTRICT NO. 210, County of Will, State of Illinois, a Body of Politic, ILLINOIS STATE BOARD OF EDUCATION, RANDY J. DUNN, an Individual, JESSE H. RUIZ, an Individual, CHRISTOPHER WARD an, Individual, VINNI M. HALL, an Individual, JOYCE E. KARON, an Individual, ANDREA S. BROWN, an Individual, DEAN E. CLARK, an Individual, DAVID L. FIELDS, an Individual, EDWARD J. GEPPERT, JR., an Individual, BRENDA J. HOLMES, an Individual, HARRY A. BLACKBURN, an Individual, JUDY J. JACOBS, an Individual, WIBUR H. BROOKMAN, an Individual, MARYANN BROOKMAN, an, Individual, TERRY L. JACOBS, an Individual, and PRAIRIE BANK AND TRUST COMPANY, as Trustee under Trust 95072, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 05 MR 225 |
| | ) ) | Honorable Herman Haase |

Defendants-Appellees.  )  Judge, Presiding.

JUSTICE McDADE delivered the opinion of the court:

Respondent, the Joliet Township Board of Education[1], appeals from an order of the circuit court of Will County, which affirmed a decision of the Illinois State Board of Education granting a petition to detach certain property from the Joliet Township district and annex it to the Lincoln Way district pursuant to section 7-2b of the Illinois School Code (Code).  (105 ILCS 5/7-2b (West 1998)).  Respondent's appeal from the circuit court's order challenges the State Board's decision on the grounds that: (1) the State Board of Education lacked jurisdiction to hear petitioners' petition; (2) petitioners failed to comply with the procedures set forth under section 7-6 of the Code (105 ILCS 5/7-6 (West 1998)); and (3) section 7-2b violates the Equal Educational Opportunities Act of 1974.  20 U.S.C. §1703 (2000).  For the foregoing reasons, we vacate the portion of the circuit court's judgment entitled "Constitutional Issues," we affirm the findings of the Illinois State Board of Education on those issues that it considered, and remand the matter to the Illinois State Board of Education for further proceedings consistent with this opinion.

FACTS

On July 17, 1998, petitioners Judy Jacobs, Terry Jacobs, Wilbur Brookman, and Maryann Brookman filed a petition pursuant to section 7-2b of the Illinois School Code (105 ILCS 5/7-2b

---

[1] For purposes of this opinion, we will refer to the appellant, the Joliet Township Board of Education, as respondent, which represents its original party classification throughout the proceedings before the Illinois State Board of Education.

(West 1998)), seeking to detach 320 acres of property from Joliet Township High School District No. 204 and annex it to Lincoln Way Community High School District No. 210. In its 1998 version, section 7-2b carves out a *pro forma* proceeding for proposed detachments that involve 10% or less[2] of the (1) equalized assessed value and (2) the territory of the district from which the property is sought to be detached. The hearing body considering the petition can only address whether the specific criteria for detachment under this section have been met. It is expressly forbidden "to hear any evidence or consider any issues" (105 ILCS 5/7-2b (West 1998)) other than those criteria. At the time the petition was filed, the hearing body for such petitions under section 7-2b was the state Board of Education.

On June 30, 1999, while the petition was still pending, the General Assembly enacted Public Act 91-46 (Pub. Act 91-46, eff. June 30, 1999). This legislation made several amendments to section 7-2b, one of which changed the hearing body on detachment petitions from the State Board of Education to the Regional Board of School Trustees. See Pub. Act 91-46, eff. June 30, 1999. At the same time, it added an entirely new section to the law, which declared:

"[S]ection 7-6 of this Code shall apply to petitions pending on the effective date of this amendatory Act of the 91st General Assembly.

The changes made by this amendatory Act of the 91st General Assembly shall not apply to petitions pending on the

_____

[2] The current statute has reduced the allowable detachment from 10% to 5%.

3

effective date of this amendatory Act of the 91st General Assembly." Pub. Act 91-46, eff. June 30, 1999.

On December 6, 1999, a hearing was conducted on petitioners' petition by State Board hearing officer Harry Blackburn. During the hearing, respondent raised three objections: first, that the State Board of Education lacked jurisdiction because under the newly amended section 7-2b, only the Regional Board of School Trustees could hear the petition; second, that the detachment petition must be denied because petitioners failed to comply with the procedural requirements of section 7-6 of the Code; and, third, that the petition violates the Equal Educational Opportunities Act of 1974 (EEOA) (20 U.S.C. §1703 (2000)), which prohibits the transfer of students from one school district to another if the effect is to increase segregation on the basis of race.

On April 21, 2003, the hearing officer issued his proposed findings of facts and conclusions of law. The hearing officer found petitioners met the requirements of section 7-2b by a preponderance of the evidence. Specifically, he found that two-thirds of the school zone's residents approved the detachment, the tract contained 10% or less of the valuation and territory of the ceding district, and the resulting district would be contiguous. It was therefore recommended that the State Superintendent of Education grant the detachment petition. In recommending detachment, the proposed order rejected respondent's jurisdictional and section 7-6 objections, and also specifically found respondent's argument that section 7-2b violates the provisions of the EEOA to be outside the scope of its statutory and regulatory authority. On February 25, 2005, the State Superintendent adopted the proposed order as his own and granted petitioners' petition.

4

On March 28, 2005, respondent filed an administrative review complaint, asking the circuit court to reverse the order of the State Superintendent. On December 29, 2005, a hearing was held in the Will County circuit court on respondent's complaint. No court reporter was present at this hearing. Upon taking the matter under advisement, the circuit court affirmed the decision of the State Board of Education and dismissed the respondent's complaint. The circuit court also made an independent finding that the Board's actions did not "create a Constitutional impediment or a violation of Federal law." The instant appeal followed

ANALYSIS

Decision on Administrative Review

When reviewing a final decision under the Administrative Review Law (735 ILCS 5/3-101 *et seq*. (West 1998)), the appellate court reviews the administrative agency's decision and not the circuit court's determination. *Ogden Chrysler Plymouth, Inc. v. Bower*, 348 Ill. App. 3d 944, 948-49, 809 N.E.2d 792, 797 (2004). Interpretation of a statute is a question of law. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254, 659 N.E.2d 961, 965 (1995). Questions of law decided by an administrative agency are not entitled to deference and are reviewed *de novo*. *Anderson v. Department of Professional Regulation*, 348 Ill. App. 3d 554, 560, 810 N.E.2d 228, 233 (2004), *Department of Revenue v. Civil Service Comm'n*, 357 Ill. App. 3d 352, 361, 827 N.E.2d 960, 968 (2005).

A. Jurisdictional challenge

We first address respondent's claim that the State Board of Education lacked jurisdiction to grant the detachment petition. Specifically, respondent claims that because Public Act 91-46 changed the hearing body from the State Board of Education (Board) to the Regional Board of

5

School Trustees, the order of the State Superintendent was entered without jurisdiction. While respondent acknowledges the savings clause contained in Public Act 91-46, it argues that such clause does not apply to the law's jurisdictional change. We disagree.

Respondent cites two Illinois decisions which it claims support the interpretation that because the jurisdictional change is procedural in nature, it must be applied retroactively. We have reviewed both cases and find them distinguishable on their facts. Neither of respondent's cited cases, *Muskat v. Sternberg*, 122 Ill. 2d 41, 521 N.E.2d 932 (1988), and *People v. Nitz*, 173 Ill. 2d 151, 670 N.E.2d 672 (1996), involve amended statutes containing a savings clause. Instead, respondent's cases concern situations where the courts were left to determine the retrospective effect of a change in the law due to the lack of any specific directive by the legislature. The legislature here, however, has specifically stated that "[t]he changes made by this amendatory Act * * * shall not apply to petitions pending on the effective date of this amendatory Act." Pub. Act 91-46, eff. June 30, 1999. Our primary objective when interpreting a statute is to give effect to the legislature's intent. The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. "Thus, when the statutory language is clear, it must be given effect without resort to other tools of interpretation." *Fisher v. Waldrop*, 221 Ill. 2d 102, 112, 849 N.E.2d 334, 339 (2006). The petition here was filed with the State Board of Education in July of 1998 and was therefore "pending" prior to the effective date of Public Act 91-46. Because the statutory language of Public Act 91-46 is clear, we are bound to give effect to the legislature's intent. We therefore find that the State Board of Education had jurisdiction to hear petitioners' detachment petition.

B. Challenge of noncompliance with Section 7-6

Respondent's second claim on appeal asserts that the earlier version of section 7-2b, upon which the Board based its decision, is deficient in that it failed to provide a mechanism for hearing or implementing petitioners' petition. Respondent argues that ection 7-2b, as amended by Public Act 91-4, addresses this deficiency by making the procedural aspects of section 7-6 applicable to all detachment proceedings. Respondent admits that section 7-6 did not previously apply to section 7-2b petitions and that its application is a change made by the amendatory act. We therefore find that the plain language of the savings clause contained in Public Act 91-46 compels our rejection of this argument also.

## C. Decision of the State Board of Education

Upon determining that the Board had jurisdiction to hear petitioners' detachment petition we turn to the merits of its decision. Section 7-2b of the Illinois School Code states that the Board "shall have no authority or discretion to hear any evidence or consider any issues" except that necessary to determine whether the conditions stated in that section have been met. 105 ILCS 5/7-2b (West 1998). Those conditions are limited to determining whether: (1) the requisite number of registered voters have joined in the petition, (2) the property to be detached/annexed falls within the statistical impact restrictions, and (3) the territory proposed to be annexed is within the geographical boundaries permitted by the section. See 105 ILCS 5/7-2b (West 1998). Petitioners presented sufficient evidence satisfying each of the requirements of section 7-2b. Accordingly, we find the Board did not err in finding these conditions met.

We also find that the Board acted in accord with its mandate when it refused to determine whether section 7-2b or the proposed detachment/annexation violated the Equal Education Opportunities Act of 1974. Through section 7-2b, the legislature has provided voters with a

7

mechanism for adjusting school districts so that children who attend elementary school together may also attend the same high school. *Rogers v. Desiderio*, 274 Ill. App. 3d 446, 450, 655 N.E.2d 930, 932 (1995). The State Board of Education, being the designated body to hear such petitions, is an administrative agency for that purpose. As such, it can only carry out the mandate of the legislature. By statutory definition, it had no authority to hear evidence or consider issues other than those stated above. "An administrative agency is analogous to a court of limited jurisdiction and can act only pursuant to the authority conferred on it by statute." *Pickering v. Human Rights Comm'n*, 146 Ill. App. 3d 340, 352, 496 N.E.2d 746, 754 (1986). In acting upon that authority it must accept as constitutional the statute through which it has jurisdiction. *Board of Education of Rich Township High School District No. 227 v. Brown*, 311 Ill. App. 3d 478, 490, 724 N.E.2d 956, 966 (1999). "An agency lacks the authority to invalidate a statute on constitutional grounds or even to question its validity." *Brown*, 311 Ill. App. 3d at 490, 724 N.E.2d at 966. Accordingly, we find the Board did not err in refusing to determine whether section 7-2(b) violated the EEOA.

D. <u>Propriety of circuit court's decision on constitutional issue</u>

As part of its administrative review order, the circuit court made a substantive finding that the Board's actions did not create "a Constitutional impediment or a violation of Federal law." Upon review, we find the circuit court lacked both the jurisdiction and the evidence to make such an independent finding.

Section 9 of article VI of the 1970 Illinois Constitution states that "[c]ircuit courts shall have such power to review administrative action as provided by law." Ill. Const. 1970, art. VI, §9. A circuit court's scope of review of an administrative agency's decision is set forth in section

8

3-110 of the Code of Civil Procedure (735 ILCS 5/3-110 (West 2004)). It states:

> "Every action to review any final administrative decision
>
> shall be heard and determined by the court with all convenient
>
> speed. The hearing and determination shall extend to all questions
>
> of law and fact presented by the entire record before the court. No
>
> new or additional evidence in support of or in opposition to any
>
> finding, order, determination or decision of the administrative
>
> agency shall be heard by the court. The findings and conclusions
>
> of the administrative agency on questions of fact shall be held to
>
> be prima facie true and correct." 735 ILCS 5/3-110 (West 2004).

A reviewing court cannot reweigh the evidence, make independent determinations of facts or substitute its judgment for that of the agency even if it believes that the opposite conclusion might be reasonable. *Jackson v. Board of Review of Department of Labor*, 105 Ill. 2d 501, 513, 475 N.E.2d 879, 885 (1985). Its function is limited to ascertaining whether the *administrative agency's findings and decision* are against the manifest weight of the evidence. *Jackson*, 105 Ill. 2d at 513, 475 N.E.2d at 885. Because the Board's authority was limited to determining whether defendants had complied with the procedural requirements of section 7-2b, the circuit court's authority was thereby limited to determining whether the Board erred in finding those requirements met.

Here, the Board properly found consideration of respondent's EEOA argument to be outside the scope of its statutory and regulatory authority. As a result, the circuit court's review of this issue was limited to determining whether the issue was in fact beyond the scope of the

9

Board's authority. While we recognize that constitutional issues can be raised in a complaint for administrative review, we note that the record is devoid of any cognizable evidence concerning respondent's constitutional claims. This absence of evidence is due to the fact that the Board did not have jurisdiction to even develop a record which the circuit court could then rely upon in formulating any constitutional decision. See 105 ILCS 5/7-2b (West 1998). The scope of review under the Administrative Act only extends to questions of law and fact presented by the record. *Howard v. Lawton*, 22 Ill. 2d 331, 334, 175 N.E.2d 556, 557 (1961). We therefore find the circuit court exceeded its jurisdiction in making the independent finding that the Board's decision did not violate any federal or constitutional law. Accordingly, we vacate the portion of the circuit court's order entitled "Constitutional Issues."

## E. Constitutionality of section 7-2b

While we have determined that the Board acted in accord with its legislative mandate and also that the circuit court exceeded its jurisdiction in making the independent finding that the Board's decision did not violate any federal or constitutional law, we are still left with the question of the facial constitutionality of section 7-2b. Specifically, section 7-2b provides that the Board "shall have no authority or discretion to hear any evidence or consider any issues except those that may be necessary to determine whether the limitations and conditions of this Section have been met." 105 ILCS 5/7-2b (West 1998). Respondent's final argument on appeal asserts that this provision violates EEOA (20 U.S.C. §1703(c) (2000), which provides in pertinent part:

> "No State shall deny equal educational opportunity to an individual
>
> on account of his or her race, color, sex, or national origin, by–

*   *   *

(c) the assignment by an educational agency of a

student to a school, other than the one closest to his

or her place of residence within the school district in

which he or she resides, if the assignment results in

a greater degree of segregation of students on the

basis of race, color, sex, or national origin among

the schools of such agency than would result if such

student were assigned to the school closest to his or

her place of residence within the school district of

such agency providing the appropriate grade level

and type of education for such student."

The merits of respondent's constitutional claim rest in the determination as to whether the statutory provision of section 7-2b, which restricts a party from raising the issue of segregation in a detachment proceeding, conflicts with the EEOA to render the provision constitutionally infirm under the supremacy clause of the United States Constitution. The federal preemption doctrine stems from the constitutional provision that the laws of the United States are the supreme law of the land, "any thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. "Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the State [are] not to be superceded by. . . Federal Act unless that [is] the clear and manifest purpose of Congress.' [Citation.]" *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 422, 112 S. Ct. 2608, 2617 (1992).

11

Accordingly, the purpose of Congress is the ultimate touchstone of a court's review under the preemption doctrine.

Congress' intent may be "'explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Cipollone*, 505 U.S. at 516, 120 L. Ed. 2d at 422-23, 112 S. Ct. at 2617, quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 51 L. Ed. 2d 604, 614, 97 S. Ct. 1305, 1309 (1977). "In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law, [citation] or if federal law so thoroughly occupies a legislative field '"as to make reasonable the inference that Congress left no room for the States to supplement it.'" [Citations.] *Cipollone*, 505 U.S. at 516, 120 L. Ed. 2d at 423, 112 S. Ct. at 2617. Specifically, the United States Supreme Court has stated:

> "Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because '[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose.' [Citation.]
>
> Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that

it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' [citation] or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' [citation]." *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022 (1982).

The Illinois Supreme Court has defined the meaning of "nullification" where there are conflicting laws, explaining:

"The doctrine of preemption, on the other hand, is applied where enactments of two unequal legislative bodies (*e.g.*, federal and state) are inconsistent. Where a statute is preempted, there is no repeal of that statute. Rather, the subordinate legislative body's enactment is suspended and rendered unenforceable by the existence of the superior legislative body's enactment. This being so, the repeal of the preempting statute revives or reinstates the preempted statute without express reenactment by the legislature. (1st citation omitted); *Kinsey Distilling Sales Co. v. Foremost Liquor Stores, Inc.*, (1958), 15 Ill. 2d 182, 154 N.E.2d 290." *Lilly Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 619 N.E.2d 137, 140 (1993).

With these principles in mind, we turn now to an analysis of respondent's contention that the restriction barring a party from raising an issue of segregation on the basis of race, color, sex or national origin is preempted by the provisions of the EEOA. Through the EEOA, Congress

has expressly provided that the assignment of a student to a school be determined on a geographic basis and not on the basis of race. See 20 U.S.C. §1701(a)(2000). Under the supremacy clause, this right cannot be nullified by state action. Section 7-2b, however, in restricting the Board's ability to hear claims of racial segregation "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the EEOA.]'" *Fidelity Federal Savings & Loan Association*, 458 U.S. at 153, 73 L. Ed. 2d at 675, 102 S. Ct. at 3022, quoting *Hines v. Davidowitz*, 312 U.S. 52, 67-68, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404 (1941). We therefore find the provision which states that the Board "shall have no authority or discretion to hear any evidence or consider any issues except those that may be necessary to determine whether the limitations and conditions of this Section have been met" is inconsistent with express directive of the EEOA.

Here, respondent claims that the Joliet school district has a 60% population of individuals from traditionally underrepresented groups. Respondent also claims that the Lincoln Way school district is "almost completely" Caucasian. Respondent concludes that allowing the petitioners' land to be detached under section 7-2b from a school district whose majority is made up of individuals from traditionally underrepresented groups and annexed to an "almost completely" Caucasian school district promotes racial segregation. While it would be inappropriate to speak as to the substantive merits of this claim due to the lack of any developed record on the issue, we do believe that such a claim must be heard in light of the EEOA's express language prohibiting the "assignment by an educational agency of a student to a school, other than the one closest to his or her place of residence within the school district in which he or she resides, if the assignment results in a greater degree of segregation of students on the basis of race, color, sex,

14

or national origin among the schools of such agency than would result if such student were assigned to the school closest to his or her place of residence * * *." 20 U.S.C. §1703(c)(2000).

Education segregation is in itself an evil which tends to frustrate students in the school and to cause antisocial attitudes and behavior. *Brown v. Board of Education*, 347 U.S. 483, 495, 98 L. Ed. 873, 881, 74 S. Ct. 686, 692 (1954). Where the creation or expansion of such segregation exists, the issue must be confronted and addressed as mandated by the EEOA. As drafted, section 7-2b, however, denies the Board any opportunity to examine the issue, thereby affording a legal loophole through which the issue can be avoided under the guise of procedural compliance. We do not believe the supremacy clause allows for such an unlawful procedure. Nor do we believe the legislature intended by its language to avoid the reach of the EEOA or to violate its terms. Instead, we hold that the prohibition against hearing any evidence or considering any issue other than compliance with the statutory criteria must be suspended by preemption and that a requirement must be read into the statute that every action taken by an educational agency that involves the assignment of a student to a school district other than the one closest to his or her place of residence must comply with the policy announced in the EEOA pursuant to the supremacy clause. Accordingly, we remand this cause to the Board of Education for the sole purpose of holding a hearing on respondent's EEOA claim.

For the reasons stated above, we vacate the portion of the circuit court's judgment entitled "Constitutional Issues," we affirm the findings of the Illinois State Board of Education on those issues that it considered, and remand the matter to the Illinois State Board of Education for further proceedings consistent with this opinion.

LYTTON, P.J., and CARTER, J., concur.

15