No. 2--04--0502

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE BOARD OF EDUCATION OF GLEN ELLYN COMMUNITY CONSOLIDATED SCHOOL DISTRICT No. 89,

Plaintiff-Appellant,

v.

THE DEPARTMENT OF REVENUE, BRIAN A. HAMMER, as Director of the Department of Revenue, THE DU PAGE COUNTY BOARD OF REVIEW, and CRAIG V. DOVEL, as Clerk of the Board of Review,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of Du Page County.

No. 03--MR--0753

Honorable

Edward R. Duncan, Jr.,

Judge, Presiding.

______________________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Board of Education of Glen Ellyn Community Consolidated School District No. 89 (Glen Ellyn), appeals a decision by the Department of Revenue (Department) denying a tax exemption for property leased by LaSalle Bank National Association (LaSalle Bank) to Glen Ellyn.  On appeal, Glen Ellyn asserts that it is entitled to a property tax exemption under section 15--35 and/or section 15--135 of the Property Tax Code (Code) (35 ILCS 200/15--35, 15--135 (West 2002)) because (1) Glen Ellyn "owns" the subject property; (2) the lease was not a lease "for profit"; and (3) section 15--35(e) does not require actual ownership of the property.  We affirm.

I. BACKGROUND

In 1999, Glen Ellyn located a two-story building to house its administrative offices.  The building was owned by Patrick Engineering and held in trust by American National Trust and Bank of Chicago (American National).  Glen Ellyn subsequently negotiated a deal with LaSalle Bank in which LaSalle Bank bought the building, placed it in trust, and leased it to Glen Ellyn.  At the closing, title was transferred directly from American National to a trust held by LaSalle Bank.  LaSalle Bank paid $2 million to purchase and renovate the building.

On September 15, 1999, LaSalle Bank entered into a 99-year lease agreement under which Glen Ellyn agreed to make semiannual payments (base rentals) to LaSalle Bank.  The lease arrangement was part of a business deal between LaSalle Bank and third-party investors, where the investors bought "certificates of participation" representing fractional interests in the semiannual payments made by Glen Ellyn.  One of the express purposes of the lease was "to induce the purchase by others of the Certificates, and for the further securing of the Certificates."  LaSalle Bank promised its investors that the investment would be tax free, and the lease expressly prohibited Glen Ellyn from taking any action on the property that would jeopardize the certificate owners' tax-free status.  The lease also provided that Glen Ellyn had the right to "sell, abandon or destroy" any part of the property only if LaSalle Bank expressly found that it "will not adversely affect" the tax-free interest the certificate owners receive from Glen Ellyn's rent payments.

Under the lease, Glen Ellyn was required to maintain and operate the property, pay all property taxes and utilities, keep adequate insurance, and file annual statements with LaSalle Bank detailing the insurance coverage of the property.  In addition, Glen Ellyn had the right to make any "alterations, additions or improvements of any kind, structural or otherwise," provided that no alteration, addition, or improvement "would adversely affect" the property or the holders of the certificates.  The lease also provided that title to "all real property or interests therein, buildings, fixtures, equipment and other personal property that is purchased or financed from moneys deposited in the Project Fund will be held in the name of" LaSalle Bank.  Glen Ellyn was not allowed to assign, encumber, or alienate its interest in any manner that jeopardized LaSalle Bank or the holders of the certificates.  Conversely, LaSalle Bank was not allowed to sell, assign, mortgage, or encumber the property without Glen Ellyn's consent.

The lease contained a schedule of payments.  Beginning on July 25, 2000, Glen Ellyn was to make semiannual payments on every July 25 and January 25.  During the first four years of the lease, Glen Ellyn was obligated to pay $561,511.53 in interest, with nothing paid towards the principal.  Over a 20-year period, Glen Ellyn would have paid off the principal of $2 million, along with $1,502,797.22 in interest.  If Glen Ellyn failed to make timely payments, LaSalle Bank had the power to proceed by court action to enforce payment of the rent.  The lease expires on September 15, 2098, or when Glen Ellyn pays "all Base Rentals for the Lease Term and all then accrued Additional Rentals" plus the "purchase price" ($2 million).  The other prepayment option in the lease relied on the trust agreement, which is not a part of the record.

Glen Ellyn took possession of the building on September 4, 2000, and sought a partial year property tax exemption under section 15--35 of the Code (35 ILCS 200/15--35 (West 2002)).  Although the partial exemption was initially approved by the Du Page County Board of Review, it was denied by the Department on October 4, 2001.

On September 20, 2002, a hearing was held before a hearing officer of the Department.  At the hearing, Bernard Madden, assistant superintendent of Glen Ellyn, testified as follows.  Extensive renovation work had been done to the building since Glen Ellyn took possession, such as adding new drywall, constructing new rooms, installing an elevator, increasing the electrical power, and updating the sidewalks.  The certificates of participation issued by LaSalle Bank paid for the cost of the building and the renovation work.  Glen Ellyn received money for the renovation after submitting documentation to LaSalle Bank detailing the work.  In addition, the lease arrangement was done without voter approval, as opposed to a bond or tax levy, which requires approval by the taxpayers in the district.  If Glen Ellyn failed to make a timely payment, LaSalle Bank had the ability to evict Glen Ellyn from the property.

On May 13, 2003, the hearing officer issued his recommendation for disposition, finding the following.  First, Glen Ellyn failed to demonstrate that it qualified as an "owner" for tax-exemption purposes.  In particular, Glen Ellyn did not prove by clear and convincing evidence that it had the right to control the property.  Rather, Glen Ellyn's right to alienate or alter the property was constrained by the tax-free status of the third-party investors.  In addition, LaSalle Bank not only owned the building, but was the express owner of all physical improvements made to the building during the renovation.  In the event of default, LaSalle Bank could institute a forcible entry and detainer action against Glen Ellyn.

Second, the lease was one "for profit."  Specifically, the lease was intended to benefit LaSalle Bank, in the form of rental receipts, and third-party investors, in the form of federal tax benefits.  Because the express purpose of the lease was to induce investors to purchase the certificates created, there was a conflict as to whether the lease was truly a financing device for the benefit of Glen Ellyn, or a business transaction for the benefit of LaSalle Bank and third-party investors.  The lease enabled the investors and LaSalle Bank to profit by furthering their own financial interests.  As such, the lease did not make the investors or LaSalle Bank mere transactional fiduciaries of Glen Ellyn.  The hearing officer noted that no provision or precedent allows for the exemption of commercial investment property, even if a school is renting the property.  Unlike a situation where a school is leasing property and a nonprofit foundation is created to further the school's purpose, Glen Ellyn and LaSalle Bank shared nothing more than a "conventional business relationship."  Moreover, Glen Ellyn failed to submit into evidence the trust agreement, which detailed the terms of the financing deal, and any resulting doubts as to whether the lease is one "for profit" must be resolved in favor of taxation.  Because Glen Ellyn was not an "owner," and because the lease was one "for profit," Glen Ellyn did not qualify for a tax exemption under sections 15--35 and 15--135 of the Code.

Last, the hearing officer determined that Glen Ellyn failed to satisfy a third requirement under section 15--35(e).  According to the hearing officer, the "leaseback" provision under section 15--35(e) requires a school district to actually "own" the property before transferring it to a third party and leasing it back.  Because Glen Ellyn did not have an ownership interest in the property to transfer to LaSalle Bank prior to entering into the lease agreement, and because LaSalle Bank bought the property from a seller other than Glen Ellyn, Glen Ellyn failed to satisfy the initial transfer requirement under section 15--35(e).  For all of these reasons, the hearing officer concluded that Glen Ellyn was not entitled to a tax exemption.

On May 19, 2003, the director of the Department adopted the hearing officer's recommended disposition in full.  On June 24, 2003, Glen Ellyn filed a complaint for administrative review in the circuit court of Du Page County.  The circuit court affirmed the Department decision in its entirety.  Glen Ellyn's timely notice of appeal followed.

II. ANALYSIS

A. Standard of Review

The issues presented in this case are (1) whether Glen Ellyn "owned" the property and (2) leased it with "a view to profit" under sections 15--35 and 15--135 of the Code; and (3) whether section 15--35(e) requires actual ownership of the property prior to a leaseback or other agreement.  With respect to ownership, all of the parties agree that this issue presents a mixed question of fact and law, requiring application of the clearly-erroneous standard of review.  However, with respect to the "for profit" and "leaseback" issues, Glen Ellyn asserts that these questions involve statutory interpretation, requiring 
de novo
 review.  
The Department and the Du Page County Board of Review counter that the clearly-erroneous standard of review is appropriate for all three issues, as they all present mixed questions of fact and law.  All the parties rely on this court's decision in 
Swank v. Department of Revenue
, 336 Ill. App. 3d 851 (2003), to support their positions.

In 
Swank
, we were asked to determine whether the "used with a view to profit" language in the first paragraph of section 15--35 (35 ILCS 200/15--35 (West 2002)) applied to section 15--35(c) of that particular statute.  
Swank
, 336 Ill. App. 3d at 856.  Specifically, we were asked to determine whether the "used with a view to profit" exclusion of section 15--35 applied to properties falling within the parameters of section 15--35(c).  
Swank
, 336 Ill. App. 3d at 856.  Because this issue involved a pure question of law, we applied 
de novo
 review.  
Swank
, 336 Ill. App. 3d at 855; see also 
C
ar
petland U.S.A., Inc. v. Illinois Department of Employment Security
, 201 Ill. 2d 351, 369 (2002) (the standard of review applicable to an agency's decision depends upon whether the question presented is one of fact or law; when the decision involves a pure question of law, we will review it 
de novo
).

However, with respect to the ultimate issue of whether the plaintiffs were entitled to receive property tax exemptions under section 15--35, we applied the clearly-erroneous standard of review.  
Swank
, 336 Ill. App. 3d at 859-60.  Relying on the supreme court cases of 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191 (1998), and 
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380 (2001), we concluded that the issue presented could not be characterized as one involving solely a question of fact or a question of law.  
Swank
, 336 Ill. App. 3d at 861.  Specifically, the decision was in part factual because it required the Department to determine whether the facts indicated that the subject property was used for educational purposes and whether it was used with a "view to profit."  
Swank
, 336 Ill. App. 3d at 861-62.  In addition, the decision was in part legal because it required the Department to construe the scope of the tax exemption, which is statutorily defined and requires interpretation.  
Swank
, 336 Ill. App. 3d at 862.  Thus, we applied the clearly-erroneous standard, which is the standard of review applicable to agency decisions that present mixed questions of law and fact.  See 
AFM Messenger Service
, 198 Ill. 2d at 392.

Unlike the situation in 
Swank
, which involved both a pure question of law and a mixed question of law and fact, none of the issues in this case can be characterized as a pure question of law.  On the contrary, the issues in this case present mixed questions of law and fact.  A mixed question of law and fact is one involving an examination of the legal effect of a given set of facts.  
AFM Messenger Service
, 198 Ill. 2d at 391, quoting 
City of Belvidere
, 181 Ill. 2d at 205.  Stated differently, a mixed question is one in which the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard or whether the rule of law as applied to the established facts is or is not violated.  
AFM Messenger
, 198 Ill. 2d at 391.

As previously stated, we are asked to review the Department's decision holding that the lease between Glen Ellyn and LaSalle Bank was (1) "for profit" in violation of sections 15--35 and 15--135 and (2) not entitled to an exemption under section 15--35(e).  Similar to the question in 
Swank
, the first issue is 
in part factual because it required the Department to determine whether the facts indicated that the lease was one "for profit."  
In addition, the issue is in part a question of law because it required the Department to construe the scope of the tax exemption, which is statutorily defined and requires interpretation.  
Likewise, the question of whether Glen Ellyn qualified for an exemption under section 15--35(e) is in part factual because it involves considering whether the facts supported the Department's findings that (1) Glen Ellyn did not have an ownership interest in the property to transfer to LaSalle Bank prior to entering into the lease agreement and (2) LaSalle Bank bought the property from a seller other than Glen Ellyn.  Also, the Department's decision concerns a question of law because whether the lease qualified for an exemption under section 15--35(e) required the statutory interpretation of legal terms and concepts.

We believe this approach to be consistent with two recent cases decided by this court.  In 
Du Page County Board of Review v. Department of Revenue
, 339 Ill. App. 3d 230 (2003), this court addressed whether a house for a church's schoolteachers was used exclusively for religious purposes, making it exempt from taxation.  While acknowledging that the clearly-erroneous test is less than well defined,
 we agreed that the supreme court has rewritten the rules for reviewing administrative agencies' decisions.  
Du Page County Board of Review
, 339 Ill. App. 3d at 234.  In that case, we determined that the exemption issue involved a mixed question of law and fact and applied the clearly-erroneous standard of review.  Similarly, in 
Ogden Chrysler Plymouth, Inc. v. Bower
, 348 Ill. App. 3d 944 (2004), 
we addressed whether payments a car dealer received from a car manufacturer as part of an employee incentive program constituted "gross receipts" subject to taxation.  
Ogden Chrysler Plymouth
, 348 Ill. App. 3d at 947.  We stated that this issue involved a mixed question of law and fact.  
Ogden Chrysler Plymouth
, 348 Ill. App. 3d at 950.  The issue partly involved legal questions of statutory interpretation, such as whether the payments constituted gross receipts.  Also, the issue was partly factual because it involved determining whether the facts, such as the structure of the employee incentive program, supported the Department's finding that the payments constituted part of the consideration for the relevant transactions.  
Ogden Chrysler Plymouth
, 348 Ill. App. 3d at 950.  Given this precedent, we apply the clearly-erroneous standard of review to all three issues in this case.

Review under the clearly-erroneous standard is significantly deferential.  
AFM Messenger Service
, 198 Ill. 2d at 393.  The rationale for this deference is based on an agency's experience and expertise.  
AFM Messenger Service
, 198 Ill. 2d at 393-94.  When the decision of an administrative agency presents a mixed question of law and fact, the agency decision will be deemed "clearly erroneous" only where the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been committed.  
AFM Messenger Service
, 198 Ill. 2d at 395.

B. Ownership Requirement

Glen Ellyn's first argument on appeal is that the Department erred in determining that it was not an owner under section 15--135.  As an initial matter, we note that the Department found that Glen Ellyn failed to satisfy the ownership requirement under sections 15--35 and 15--135.  Although the Department contends that Glen Ellyn sought a tax exemption only under section 15--35, and not under section 15--135, Glen Ellyn claims that it amended its application by motion.  Glen Ellyn concedes that the motion to amend and subsequent order are not part of the record.  Nevertheless, Glen Ellyn claims that the results of that motion and order are evident as the Department's opinion clearly states that it reviewed Glen Ellyn's application for tax exemption under both sections.  In addition, Glen Ellyn points out that the Department expressly found that it was not entitled to an exemption under section 15--135.  Based on the Department's decision, we agree with Glen Ellyn that it may appeal the Department's denial of a tax exemption under section 15--135.

Section 15--135 states, in relevant part, that "[a]ll property 
of
 public school districts or public community college districts not leased by those districts or otherwise used with a view to profit is exempt."  (Emphasis added.)  35 ILCS 200/15--135 (West 2002).  Accordingly, one of the requirements of section 15--135 is that the subject property be owned by a school.  All of the parties agree that LaSalle Bank, the named titleholder of the property, is not a school.  However, the parties do not agree on whether LaSalle Bank or Glen Ellyn qualifies as the owner of the property.

At the outset, we note that the general rule is that all property is subject to taxation unless specifically exempted by statute.  
Swank
, 336 Ill. App. 3d at 855.  Statutory tax exemptions must be construed narrowly and strictly in favor of taxation.  
Swank
, 336 Ill. App. 3d at 855.  Moreover, the party claiming the exemption has the burden of proving clearly and conclusively that it is entitled to the exemption.  
Swank
, 336 Ill. App. 3d at 855-56.  All facts are to be construed, and all debatable questions resolved, in favor of taxation.  
Swank
, 336 Ill. App. 3d at 855.

Ownership of real estate is a broad concept and can apply to one other than the record titleholder.  
Wheaton College v. Department of Revenue
, 155 Ill. App. 3d 945, 947 (1987).  The meaning of the word "owner" depends upon the nature and purpose of the statute involved.  
Wheaton College
, 155 Ill. App. 3d at 947.  In determining ownership of property for tax purposes, the concern is with the realities of ownership rather than legal title.  
Chicago Patrolmen's Ass'n v. Department of Revenue
, 171 Ill. 2d 263, 273 (1996).  "Under this test, the key elements of ownership are control and the right to enjoy the benefits of the property."  
Chicago Patrolmen's Ass'n
, 171 Ill. 2d at 273.  The primary incidents of ownership include the right to possession, the use and enjoyment of the property, the right to change or improve the property, and the right to alienate the property at will.  
Wheaton College
, 155 Ill. App. 3d at 947.

In support of its position, Glen Ellyn maintains that the lease involved here is simply an alternative method of financing, that it has a substantial economic interest in the property due to the biannual lease payments and capital improvements made, and that it pays real estate taxes, utilities, insurance, and maintenance costs.  Further, Glen Ellyn points out that it has the option to purchase the building, that the lease does not require a security deposit, and that LaSalle Bank is prohibited from selling, assigning, mortgaging, or encumbering the property.  Although Glen Ellyn argues that this case is strikingly similar to 
Christian Action Ministry v. Department of Local Government Affairs
, 74 Ill. 2d 51 (1978), and 
Cole Hospital, Inc. v. Champaign County Board of Review
, 113 Ill. App. 3d 96 (1983), we find both of these cases distinguishable.

In 
Christian Action Ministry
, an Illinois not-for-profit corporation (the Ministry) entered into a contract for the purchase of certain property.  
Christian Action Ministry
, 74 Ill. 2d at 54.  The Ministry paid $30,000 down, made monthly payments of $2,500, was responsible for real estate taxes, and used the property exclusively for charitable purposes.  
Christian Action Ministry
, 74 Ill. 2d at 54.  According to the contract, no title would pass to the Ministry until the deed was delivered or until the full purchase price was paid.  
Christian Action Ministry
, 74 Ill. 2d at 54.  The Department found that the property was not exempt, because the Ministry was not the title owner.  
Christian Action Ministry
, 74 Ill. 2d at 54.  The question before the supreme court was whether the Ministry owned the property, thereby entitling it to tax-exempt status.  
Christian Action Ministry
, 74 Ill. 2d at 61.  The supreme court held that the down payment, the monthly payments, and the responsibility for real estate taxes demonstrated the Ministry's substantial interest in the property.  
Christian Action Ministry
, 74 Ill. 2d at 62.  Rejecting the notion that only legal title would satisfy the requirement of ownership, the court allowed the exemption, determining that the Ministry was the equitable owner of the property.  
Christian Action Ministry
, 74 Ill. 2d at 61-62.  In so holding, the supreme court stated:

"Had the Ministry arranged a mortgage loan for the property, it would have qualified for the tax-exempt status.  To penalize a charitable institution for failing to acquire customary forms of financing, and, hence, for making the alternative arrangement of a contract for sale of property in order to carry on its good works, runs counter to the stated objective and policy consideration of encouraging charitable activity."  
Christian Action Ministry
, 74 Ill. 2d at 62.

However, 
Church Action Ministry
 is not controlling in this case, because it 
involved a contract for purchase rather than a lease.  See 
Coles-Cumberland Professional Development Corp. v. Department of Revenue
, 284 Ill. App. 3d 351, 354 (1996) (in considering the question of ownership, a case involving a lease is distinguishable from a case involving a contract for purchase, because the extent of the ownership interest must be gleaned from the lease); see also 
American National Bank & Trust Co. v. Department of Revenue
, 242 Ill. App. 3d 716, 724 (1993) (court distinguished lease of property from contract for sale of property for purposes of tax exemption).

In 
Cole Hospital
, a not-for-profit hospital (Cole) with a troubled financial history sought to construct a new patient care facility.  After exploring numerous sources of financing without success, Cole struck a deal with a private organization (Safe Care) whereby Safe Care would advance to Cole $5.5 million for construction of the new facility.  
Cole Hospital
, 113 Ill. App. 3d at 98.  As part of the deal, Cole conveyed legal title to the hospital property to Safe Care, and the property was then leased back to Cole for a term of 20 years.  
Cole Hospital
, 113 Ill. App. 3d at 100.  In considering whether the lease divested Cole of ownership, the court determined that Cole had sufficient incidents of ownership to qualify for exemption.  
Cole Hospital
, 113 Ill. App. 3d at 100.  Specifically, the court noted that Cole had made extensive efforts to obtain private financing, the lease did not provide for a security deposit, Cole had the absolute option to purchase the property at 10 times the annual rental rate, and Cole had the right of first refusal in the event Safe Care received an offer of purchase.  
Cole Hospital
, 113 Ill. App. 3d at 100. Although the court noted that not every lease will qualify for an exemption, this particular sale and leaseback, which was used as a financing device in place of conventional financing, qualified.  
Cole Hospital
, 113 Ill. App. 3d at 101.

The obvious distinction in 
Cole Hospital
 is that Cole originally owned the property before conveying it to Safe Care and then leasing it back.  Although Cole had made several attempts to obtain traditional financing, it was unable to do so and was forced to engage in "creative financing" whereby it conveyed the property to Safe Care subject to a leaseback arrangement.  Unlike 
Cole Hospital
, this case does not involve a sale-and-leaseback arrangement.  Moreover, there is no evidence that Glen Ellyn had a troubled financial history or pursued other means of financing.

Rather than resembling 
Christian Action Ministry
 or 
Cole Hospital
, this case more closely resembles 
Wheaton College
.  In that case, this court held that a college-lessee did not have sufficient incidents of ownership in a property to qualify it for a tax exemption.  The property in 
Wheaton College
 was an apartment building leased by the college and used for student housing.  
Wheaton College
, 155 Ill. App. 3d at 946.  A trustee-bank held legal title to the property, and the trust's sole beneficiaries were private individuals (the Walters).  
Wheaton College
, 155 Ill. App. 3d at 946.  The 30-year lease provided that the college pay monthly rent, all taxes, utilities, and insurance on the property.  
Wheaton College
, 155 Ill. App. 3d at 946.  In addition, the lease provided that the college had the sole right to alter or remove existing structures, erect new structures, sublet the property without consent, and purchase the property for $106,000 upon the death of the survivor of Mr. and Mrs. Walter.  
Wheaton College
, 155 Ill. App. 3d at 946.  In concluding that the college was not an owner for tax-exemption purposes, we explained that "most, if not all, of the tax and other advantages of the transaction inured to the Walters' benefit."  
Wheaton College
, 155 Ill. App. 3d at 948.  Although the lease gave the college several incidents of ownership, including the right to remove existing structures and the right to sublease the property, it did not give other rights, such as the right to alienate fully the property.  
Wheaton College
, 155 Ill. App. 3d at 948.  We distinguished 
Cole Hospital
 on the basis that the college did not claim to undertake its "unusual financing arrangement because it was unable to obtain conventional financing."  
Wheaton College
, 155 Ill. App. 3d at 948.  Because the leasing arrangement was undertaken primarily for the benefit of the Walters rather than the college, tax-exempt status was denied.

Wheaton College
 was cited with approval by our supreme court.  See 
Chicago Patrolmen's Ass'n
, 171 Ill. 2d at 280-81 (holding that charitable organization that had undivided 50% interest in property co-owned by noncharitable organization was not "realistic owner" of property for tax-exemption purposes).  Moreover, it is consistent with 
Coles-Cumberland Professional Development Corp.
, where property leased by a for-profit corporation to a not-for-profit charitable organization was not entitled to a tax exemption.  
Coles-Cumberland Professional Development Corp.
, 284 Ill. App. 3d at 354-55 (ownership of leased property remained with nonexempt lessor rather than exempt lessee; property was leased for profit and did not qualify for property tax exemption where lessee rented property for $45,000 and paid real estate taxes, leasehold could not be assigned without approval, and development of property enhanced lessor's ownership); see also 
Springfield Marine Bank v. Property Tax Appeal Board
, 44 Ill. 2d 428, 429-30 (1970) (nonexempt lessor may be taxed on the full value of the property even when the right to the use of the property was transferred under a 99-year lease to a charitable organization).

In sum, we cannot say that the Department's finding that Glen Ellyn failed to satisfy the ownership requirement is clearly erroneous.  According to the Department, the primary monetary benefits that flowed from the lease benefitted LaSalle Bank and third-party investors.  Under the terms of the lease, (1) Glen Ellyn was not allowed to assign, encumber, or otherwise alienate its interest in the property; (2) Glen Ellyn's right to make alterations to the property and remove structures was restricted; and (3) all fixtures, alterations, or improvements paid for with proceeds from the certificates were the property of LaSalle Bank.  Under these facts, we are not left with the definite and firm conviction that the Department made a mistake in concluding that LaSalle Bank, and not Glen Ellyn, exercised the key elements of ownership of this property.

C. Not-for-Profit Requirement

Nor do we believe that the Department's finding that the lease was one "for profit" is clearly erroneous.  As set forth above, section 15--135 exempts property of public school districts "not leased by those districts or otherwise used with a view to profit."  35 ILCS 200/15--135 (West 2002).  Thus, property leased or otherwise used with a view to profit is not exempt.  
Coles-Cumberland Professional Development Corp.
, 284 Ill. App. 3d at 354.

In arguing that the lease was not one for profit, Glen Ellyn argues that it is the primary use of the property after the leasing that determines tax-exempt status.  See 
People ex rel. Goodman v. University of Illinois Foundation
, 388 Ill. 363, 370 (1944).  However, in "determining whether the use to which certain property is put is for an exempt purpose, the intention of the owners of such property when putting it to use must first be ascertained."  
People ex rel. Goodman
, 388 Ill. at 371; see also 
Victory Christian Church v. Department of Revenue
, 264 Ill. App. 3d 919, 922 (1994) (whether property is used for profit depends on the intent of the owner in using the property).  While Glen Ellyn asserts that the Department erred in focusing on the benefit of the lease to third-party investors rather than on the primary use of the property, we disagree.  Here, although the property was used for "school" purposes, it is the owner's intent that controls.  Having determined that LaSalle Bank is indeed the owner of the property, Glen Ellyn's argument that the lease is not for profit must fail.

Moreover, Glen Ellyn's argument that the benefits received by LaSalle Bank are "incidental" to the primary use of the building must be rejected.  In 
People ex rel. Goodman
, the supreme court stated that even incidental income must be not for profit: "[i]f the property is devoted to a purpose exempt within the contemplation of the law, an incidental use of its facilities for another purpose, when 
not for profit
, does not defeat the exemption."  (Emphasis added.)  
People ex rel. Goodman
, 388 Ill. at 370-71.  Unlike the situation in 
People ex rel. Goodman
, where the lessor was a wholly nonprofit corporation whose purpose was to assist in developing and increasing the facilities of the University of Illinois, LaSalle Bank is a for-profit, commercial financial institution.

Victory Christian Church
 is instructive on this issue.  There, the appellate court addressed whether property leased to a religious organization by a private, for-profit party and used for religious and school purposes was exempt from real estate taxes.  
Victory Christian Church
, 264 Ill. App. 3d at 920.  There, the court determined that the property, owned by a private individual, was leased to the church for a profit.  
Victory Christian Church
, 264 Ill. App. 3d at 922-23.  In particular, the court stated:

"[
B]efore
 one looks to the primary use to which the property is used after the leasing, one must look first to see if the 
owner
 of the real estate is entitled to exemption from property taxes.  If the owner of the property is exempt from taxes, then one may proceed to examine the use of the property to see if the tax exempt status continues or is destroyed."  (Emphasis added.)  
Victory Christian Church
, 264 Ill. App. 3d at 922.

See also 
American National Bank & Trust
, 242 Ill. App. 3d at 724 (property owned by for-profit entity and leased to church for religious purposes was leased with a view to profit regardless of fact that church intended to purchase the property and that lease required church to pay the owner monthly property taxes).

In this case, one of the express purposes of the lease was "to induce the purchase by others of the Certificates, and for the further securing of the Certificates."  As the Department noted, this purpose implied that the lease was not simply a financing device.  Under the lease, third-party investors received "distributions" that were paid from interest on the certificates that the investors purchased.  Although the burden was on Glen Ellyn to show clearly and conclusively that it is entitled to tax exemption, it failed to submit the trust agreement that set forth the terms and conditions of the financial arrangement between LaSalle Bank and Glen Ellyn.  See 
Victory Christian Church
, 264 Ill. App. 3d at 922 (there is a presumption that no exemption is intended and the party claiming the exemption has the burden of showing that the property clearly falls within the exemption; any debatable question is to be resolved in favor of taxation).  Based on the record presented, the Department's finding that the lease was one for profit is not clearly erroneous.

D. Ownership Requirement Under Section 15--35(e)

Glen Ellyn's final argument on appeal is that it qualifies for a tax exemption under section 15--35(e) of the Code.  According to Glen Ellyn, section 15--35(e) does not require actual ownership of the property before it is leased or transferred to a nonexempt entity.

Section 15--35 states, in relevant part:

"All property donated by the United States for school purposes, and all property of schools, not sold or leased or otherwise used with a view to profit, is exempt, whether owned by a resident or non-resident of this State or by a corporation incorporated in any state of the United States.  Also exempt is:

* * *

(e) property 
owned
 by a school district.  The exemption under this subsection is not affected by any transaction in which, for the purpose of obtaining financing, the school district, directly or indirectly, leases or otherwise transfers the property to another for which or whom property is not exempt and immediately after the lease or transfer enters into a leaseback or other agreement that directly or indirectly gives the school district a right to use, control, and possess the property.  In the case of a conveyance of the property, the school district must retain an option to purchase the property at a future date or, within the limitations period for reverters, the property must revert back to the school district."  (Emphasis added.)  35 ILCS 200/15--35(e) (West 2002).

The primary rule of statutory construction is to give effect to legislative intent by first looking at the plain meaning of the language.  
Swank
, 336 Ill. App. 3d at 857.  Where the language of a statute is clear and unambiguous, a court must give it effect as written, without reading into it exceptions, limitations, or conditions that the legislature did not express.  
Swank
, 336 Ill. App. 3d at 857.  In addition, courts must construe a statutory tax exemption narrowly and strictly in favor of taxation.  
Swank
, 336 Ill. App. 3d at 855.

According to the Department, property otherwise qualifying for an exemption under section 15--35 will not lose its exempt status if, for purposes of obtaining necessary financing, the school district (1) leases or otherwise transfers the property to another for which or whom the property is not exempt; and then (2) enters into a leaseback or other agreement that directly or indirectly gives the school district a right to use, control, or possess the property.  In applying this statutory provision, the Department concluded that (1) the property here did not otherwise qualify for an exemption under section 15--35, because Glen Ellyn was not the "owner" of the property and the property was leased with a "view to profit"; (2) section 15--35(e) requires that a school district hold some type of "ownership interest" in order to alienate or transfer the property to a nonexempt entity; (3) the record failed to disclose that Glen Ellyn ever transferred the property to LaSalle Bank prior to entering the lease agreement; and (4) LaSalle Bank bought the property from a seller separate and distinct from Glen Ellyn.

The Department's finding that Glen Ellyn failed to qualify for an exemption under section 15--35(e) is not clearly erroneous.  Contrary to Glen Ellyn's assertion, the statutory language is clear that section 15--35(e) applies only to "property owned by a school district."  The fact that this clause is placed at the beginning of the subsection demonstrates that ownership of the property is a prerequisite to exemption under that subsection.  Stated simply, the plain language reveals that it is the legislature's intent that a school "own" property before leasing it or otherwise transferring it to another party.  As a result, Glen Ellyn ignores the express language of the statute by arguing that section 15--35(e) does not require actual ownership.  We note that the burden was on Glen Ellyn to show that it held some type of ownership interest in the property prior to its transaction with LaSalle Bank.  Because Glen Ellyn failed to meet this burden, the Department's decision that Glen Ellyn did not qualify for an exemption under section 15--35(e) is not clearly erroneous.

III. CONCLUSION

For the aforementioned reasons, we affirm the circuit court of Du Page County's order affirming the Department's decision that Glen Ellyn is not entitled to a tax exemption under sections 15--35 and 15--135 of the Code.

Affirmed.

McLAREN and CALLUM, JJ., concur.