In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 16-3932 & 16-3944

VILLAGE OF BEDFORD PARK, *et al.*,

*Plaintiffs-Appellants*,

and

VILLAGE OF LOMBARD,

*Plaintiff-Cross-Appellee*,

*v.*

EXPEDIA, INC., *et al.*,

*Defendants-Appellees, Cross-Appellants*.

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-05633 — **Matthew F. Kennelly**, *Judge*.

_____

ARGUED OCTOBER 23, 2017 — DECIDED NOVEMBER 22, 2017

_____

Before BAUER and HAMILTON, *Circuit Judges*, and DARROW,
*District Judge*.*

_____

* Of the Central District of Illinois, sitting by designation.

DARROW, *District Judge*. Thirteen Illinois municipalities ("the municipalities") assert that the Appellees-Cross-Appellants, which are online travel agencies ("OTAs"), have withheld money owed to them under their local hotel tax ordinances. The OTAs operate their online travel websites under the "merchant model"; customers pay an OTA directly to reserve rooms at hotels the OTA has contracted with. The participating hotels set a room rental rate. The OTA charges the customer a price that includes that rate, the estimated tax owed to the municipality, and additional charges for the OTA's services. After the customer's stay, the hotel invoices the OTA for the room rate and taxes, and remits the taxes collected to the municipality. The municipalities argue that they have been shorted tax revenue over the years because the OTAs do not remit taxes on the full price that customers pay. To illustrate, assume a 5 percent tax. If a customer books a room directly with a hotel for $100 a night, the hotel collects $5 for taxes and remits that to the municipality. But if a customer books a room through an OTA for $100 and the hotel's room rental rate is only $60, the OTA pays the hotel $63 and the hotel remits $3 to the municipality. The municipalities seek to collect the additional $2 from the OTAs. But none of the municipal ordinances place a duty on the OTAs to collect or remit the taxes, so the municipalities have no recourse against the OTAs. The OTAs are entitled to summary judgment against all of the municipalities.

*I.* *Factual Background*

The facts of this case are not highly disputed, but their legal significance is. At issue is how the OTAs in this case—Expedia, Priceline, Travelocity, and Orbitz[1]—function and the thirteen municipal tax ordinances.

a. **Online Travel Agencies' Practices**

The OTAs enter into contracts with hotels, under which the hotels agree to make rooms available for the OTAs. The OTAs then market those rooms and allow customers to reserve them through their websites. The OTAs do not pre-pay for rooms and re-rent them to customers and they do not bear any loss if the rooms are not reserved. And the hotels can cease offering rooms through the OTAs at any time.

When a customer reserves a room through an OTA, he pays the OTA directly—the OTA serves as the merchant of record on the customer's credit card bill. The OTAs present the price in two line items: first, a charge for the room and second, a charge for taxes and fees. The charge for the room includes the room rate as set by the hotel, plus additional charges set by the OTAs. The customer never sees the hotel's room rate, but must agree to the OTA's terms and conditions,

---

[1] For ease, the Court uses these four OTAs specifically to refer to the four groups of Appellees-Cross-Appellants: the Expedia group (including Hotels.com, L.P., Hotwire, Inc., Expedia, Inc., and Egencia, LLC); the Priceline group (including priceline.com Inc. (n/k/a The Priceline Group Inc.), priceline.com LLC, and Travelweb LLC); the Travelocity group (including TVL LP (f/k/a Travelocity.com LP) and Site59.com LLC); and the Orbitz group (including Orbitz, LLC, Trip Network, Inc., and Internetwork Publishing Corp. (d/b/a Lodging.com)).

which state that the price charged includes the cost of the hotel plus consideration for the OTA's services. The taxes and fees charge includes the estimated taxes the hotel will owe on the rental plus additional fees as set by the OTA. If the customer incurs additional charges during his stay, he pays those to the hotel directly. After the customer checks out, the hotel invoices the OTA—or charges a virtual credit card provided by the OTA—for the room rate plus applicable taxes.

Although representatives from the OTAs, and statements made to the Securities and Exchange Commission, indicate that the OTAs "sell" hotel rooms to customers, the OTAs assert that this is merely industry jargon. *See, e.g.*, Priceline Rep. Dep. 231:3–9, Pls.'s Statement of Undisputed Facts Ex. 19, ECF No. 256-5[2] ("I want to be careful to point out that [the terms purchase and sale are] commonly used in the context of customers making reservations with hotels whose rates and inventory were made available to us … . We are not in the business of buying and selling hotel rooms."). Contracts between hotels and the OTAs confirm that the OTAs do not actually buy, and never acquire the right to enter or grant possession of, hotel rooms. Instead, the OTAs take reservation requests from customers and transmit those to the hotels. The contracts require the hotels to honor those requests, but the customer does not obtain the right to occupy the room until he checks in at the hotel.

The OTAs do provide additional services to customers between payment and check in at the hotel. In fact, a customer will likely only deal with the OTA prior to checking in because

---

[2] This ECF number refers to the district court's docket.

OTAs handle reservation modifications, cancellations, and re-
funds. The OTAs generally enforce a hotel's cancellation poli-
cies, but sometimes set their own policies and charge their
own cancellation fees. The OTAs also often provide customer
service support, but some contracts specify that the OTAs will
refer hotel-specific questions to the hotels.

### b. Municipal Ordinances

Though each of the thirteen ordinances has unique as-
pects, all fall into one of three general categories: those that
place the duty to collect and remit the tax on owners, opera-
tors, and managers of hotels or hotel rooms; those that apply
to all persons engaged in the business of renting hotel rooms;
and those that incorporate elements of both.[3]

### i. Owners, Operators, and Managers

Seven municipalities—Arlington Heights, Bedford Park,
Oak Lawn, Orland Park, Orland Hills, Schaumburg, and Tin-
ley Park—have ordinances that impose a tax on the use and
privilege of renting, leasing, or letting hotel and motel rooms.
While a hotel guest ultimately bears responsibility for the tax,
the ordinances generally place the duty of collecting the tax
from the renter and paying it to the municipality on the
owner, operator, or manager of hotels. Some of the ordinances
place the duty on owners, operators, and managers of hotel
accommodations, which are defined as "[a] room or rooms in
any building or structure kept, used or maintained as or ad-
vertised or held out to the public to be an inn, motel, hotel" or

---

[3] Most of the ordinances have been amended over time—for example,
the tax rates have been increased or enforcement mechanisms have been
altered—but, unless otherwise noted, the amendments have not changed
the ordinances in aspects relevant to this case.

a similar facility. Orland Hills Ordinance, Br. Appellants Sep. App. 170; Orland Park Ordinance, *id.* at 355–56 (same); Tinley Park Ordinance, *id.* at 369 (same).

### ii. Engaged in Renting Hotel Rooms

Three of the municipalities—Rockford,[4] Willowbrook, and Lombard—impose a tax on persons engaged in the business of renting, leasing, or letting rooms in a hotel. In Willowbrook and Rockford, the tax rate is a percentage of gross rental receipts from renting, leasing, or letting rooms in a hotel. Lombard's ordinance requires the tax "to be stated separately as an additional charge on individual billings," *id.* at 338, but does not specify what amount the tax rate applies to.

### iii. Hybrids

The last three municipalities have ordinances encompassing elements of both types of taxes. For example, Des Plaines taxes all "persons engaged in the business of renting, leasing or letting rooms in a hotel or motel." *Id.* at 302. But the tax ordinance places a duty on operators of hotels or motels to keep records and on owners of hotels to file monthly tax returns reflecting the tax received. The ordinance also requires the owner to pay the taxes due at the time of filing. Warrenville's ordinance is similar in relevant respects. Burr Ridge

---

[4] Rockford has two ordinances. One imposes a 1 percent tax on "the charge for renting a hotel or motel room." Br. Appellants Sep. App. 190. "Any person engaged in renting hotel or motel rooms" must include the tax in the rental price and remit the amount collected to the city. *Id.* This ordinance, like the ones described above, taxes a consumer, but places the duty to collect the tax on those "engaged in renting." The other is a tax on "all persons engaged in the City of Rockford in the business of renting, leasing, or letting rooms in a hotel." *Id.* at 204.

taxes "the use and privilege of engaging in the business of renting, leasing or letting of room(s) in a motel or hotel." *Id.* at 274. But the ordinance places the duty to pay the tax on "[t]he owner, manager or operator of each hotel or motel." *Id.* at 275.

### c. Procedural History

The municipalities filed a putative class action against the OTAs in state court alleging that they had failed to remit taxes owed to the named municipalities and others similarly situated in Illinois. *Vill. of Bedford Park v. Expedia, Inc. (WA)*, 193 F. Supp. 3d 911, 917 (N.D. Ill. 2016). It was removed to the Northern District of Illinois under the removal provision of the Class Action Fairness Act of 2005, 28 U.S.C. § 1453(b). *Id.* The district court denied class certification, but retained jurisdiction. *Id.* After discovery, both sets of parties moved for summary judgment. *Id.* The district court granted the OTAs summary judgment against all but one municipality, Lombard. *Id.* at 939. In turn, the court granted Lombard summary judgment against the OTAs. *Id.* Both the municipalities and the OTAs appeal the grant of summary judgment against them.

## II.    Discussion

We review the district court's decision to grant summary judgment de novo. *United Cent. Bank v. KMWC 845, LLC*, 800 F.3d 307, 310 (7th Cir. 2015). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where, as here, the district court was faced with cross-motions for summary judgment, we must construe all facts and inferences in favor of the party against whom the

motion under consideration is made … ." *United Cent. Bank*, 800 F.3d at 310–11.

This case involves construction of municipal ordinances, which are interpreted in the same manner as Illinois statutes. *Landis v. Marc Realty, L.L.C.*, 919 N.E.2d 300, 303 (Ill. 2009). The Court's "primary objective is to ascertain and give effect to the intent of the legislature." *In re Consol. Objections to Tax Levies of Sch. Dist. No. 205*, 739 N.E.2d 508, 512 (Ill. 2000). "The language of the statute provides the best indication of the legislature's intent." *Id.* Where a phrase or word is undefined, "[i]t is appropriate to employ a dictionary to ascertain [its] meaning." *Landis*, 919 N.E.2d at 304. "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses." *People v. Beachem*, 890 N.E.2d 515, 520 (Ill. 2008) (quoting *In re J.W.*, 787 N.E.2d 747, 767 (Ill. 2003)). If a statute imposing a tax is ambiguous, it must be "strictly construed against the government and in favor of the taxpayer." *In re Consol.*, 739 N.E.2d at 512.

### a. Certification of State Law Issues

First, the municipalities ask the Court to certify, pursuant to Circuit Rule 52(a), four questions to the Illinois Supreme Court: 1) whether the OTAs are "operators" of hotels or hotel rooms; 2) whether the OTAs "own" hotel rooms; 3) whether the OTAs are "managers" of hotel rooms; and 4) whether "gross rental receipts" refers to the room rate negotiated between the OTA and the hotel or the full amount the customer pays to the OTA.

"Certification is a useful tool of cooperative federalism." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 671 (7th Cir. 2001). But it is costly and burdensome, so "we approach the

decision to certify with circumspection." *Id.* We have found certification appropriate:

> when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue.

*Id.* at 672 (quoting *In re Badger Lines, Inc.*, 140 F.3d 691, 698 (7th Cir. 1998)). We will not certify questions when what is required is "the exercise of a court's judgment." *Id.* The most important consideration is whether we find ourselves "genuinely uncertain about a question of state law." *Id.* at 671.

We recognize that the Illinois Supreme Court has not ruled on these issues yet, but find that this is not a proper case for certification. This case involves routine questions of statutory interpretation that this Court is well-equipped to handle. After interpreting the meaning of the thirteen ordinances, this case merely requires the Court to exercise judgment as to whether the undisputed facts show that the ordinances apply to the OTAs. And although similar issues are likely to recur as other municipalities bring similar suits, the Illinois Supreme Court can correct our interpretations if it finds them erroneous. *Cf. Chi. Teachers Union, Local No. 1, Am. Fed'n Teachers v. Bd. of Educ. of Chicago*, 662 F.3d 761, 764 (7th Cir. 2011) ("The federal injunction means that there will be no opportunity for a state court to correct our interpretation of state law if it is erroneous … ."). The motion to certify is DENIED.

### b. Owners, Operators, and Managers

Seven of the ordinances place on owners, operators, and managers of hotels or hotel rooms the duty to collect the tax from a renter and remit it to the municipality. Thus, if the OTAs are not owners, operators, or managers, they have no obligations under these ordinances. The district court granted the OTAs summary judgment against the municipalities with these ordinances—Arlington Heights, Bedford Park, Oak Lawn, Orland Hills, Orland Park, Schaumburg, and Tinley Park—because it found that the OTAs were not owners, operators, or managers. We agree.

The ordinances do not define owner, operator, or manager. The Court presumes that these words have their plain meaning. An owner is "[s]omeone who has the right to possess, use, and convey something" or "a person in whom one or more interests are vested." *Owner*, BLACK'S LAW DICTIONARY (10th ed. 2014); *accord Bd. of Educ. of Glen Ellyn Cmty. Consol. Sch. Dist. No. 89 v. Dep't of Revenue*, 825 N.E.2d 746, 754 (Ill. App. Ct. 2005) ("The primary incidents of ownership include the right to possession, the use and enjoyment of the property, the right to change or improve the property, and the right to alienate the property at will."). Clearly, the OTAs do not own hotels. They have no right to possess or use the hotels they contract with or to convey them to others.

At least four of the ordinances (Bedford Park, Orland Hills, Orland Park, and Tinley Park) appear to place the duty of collecting and remitting taxes on owners of hotel rooms in addition to owners of hotels. But the OTAs do not own hotel rooms either. They have no right to use or possess hotel rooms and they have no independent right to convey hotel rooms to consumers—they contract with hotels for the ability to make

reservations for customers. Reservations are sent to the hotels and the customers can only take temporary possession upon checking in at the hotel. Under any plain understanding of the word "own," OTAs do not own hotels or hotel rooms.

A manager is "[s]omeone who administers or supervises the affairs of a business, office, or other organization." *Manager*, BLACK'S LAW DICTIONARY (10th ed. 2014). Clearly the OTAs are not managers of hotels—they do not supervise the affairs of hotels. The municipalities seem to argue only that the OTAs are managers of hotel *rooms* for purposes of three of the ordinances (Orland Park, Orland Hills, and Tinley Park). To be a manager of a hotel room, the OTAs would need to supervise the affairs of the room. But a hotel room is not a business separate from the hotel it is located in. The municipalities argue that "the OTAs are unquestionably in charge of the affairs of businesses that step into the shoes of hotels and assume many day-to-day hotel functions." Br. Appellants 26. Of course the OTAs are in charge of their own businesses, but that does not make them managers of hotels or hotel rooms.

The municipalities decry most forcefully the district court's interpretation of the term operator. The district court defined operator as one "who uses and controls something." *Expedia*, 193 F. Supp. 3d at 922 (quoting *Operator*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/operator (last visited June 20, 2016)). But even under an arguably more on-point definition of operator, the OTAs are not operators of hotels or hotel rooms. The municipalities suggest that an operator is "one who operates or runs a business." Br. Appellants 21; *see also Operator*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/operator (last visited Oct. 13, 2017) ("one that operates a

business"). An operator could also be one who operates; or one who "perform[s] a function" or "exert[s] power or influence." *Operate*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/operate (last visited Oct. 12, 2017).

But the OTAs do not perform the function of running a hotel. They perform one set of functions that a hotel does—making room reservations, processing financial transactions, and handling customer service with respect to those transactions. But that the OTAs engage in one hotel function does not transform them into operators of hotels. We would not say that when a hotel contracts with a cleaning service that orders supplies and hires, schedules, and pays workers, the cleaning service becomes an operator of the hotel. Cf. *Pitt Cty. v. Hotels.com, L.P.*, 553 F.3d 308, 313 (4th Cir. 2009) ("The online companies … have no role in the day-to-day operation or management of the hotels. Thus, they cannot be said to operate the hotels."); *City of Goodlettsville v. Priceline.com, Inc.*, 844 F. Supp. 2d 897, 912 (M.D. Tenn. 2012) ("As concerns hotels, those [definitions of operate] strongly suggest day-to-day management of the hotel property itself."); *Hamilton Cty. v. Hotels.com, L.P.*, No. 3:11 CV 15, 2011 WL 3289274, at *2 (N.D. Ohio July 29, 2011) (holding that OTAs were neither owners nor operators of hotels and that they did not furnish lodging to guests); *Mont. Dep't of Revenue v. Priceline.com, Inc.*, 354 P.3d 631, 635 (Mont. 2015) ("The OTCs do not fit within the dictionary definition of 'owners or operators.' They do not possess, run, control, manage, or direct the functioning of a hotel or rental agency."). *But see City of Chicago v. Hotels.com, L.P.*, No. 2005 L 051003, Br. Appellants App. 69 ("Being an operator of hotel accommodations does not require ownership of hotel

accommodations. An operator only has to exert power or in-fluence over hotel accommodations, which Defendants do.").

Additionally, most of the ordinances list those with the duty to collect the tax as owners, operators, or managers of hotels.[5] Under the principle of *noscitur a sociis*, "which coun-sels that a word is given more precise content by the neigh-boring words with which it is associated," *United States v. Wil-liams*, 553 U.S. 285, 294 (2008), the meaning of operator should be informed by its inclusion on a list with owner and man-ager. This suggests that an operator is, like an owner or a man-ager, someone who generally oversees the business of run-ning a hotel.

Three of the ordinances (Orland Hills, Orland Park, and Tinley Park) cover operators of hotel rooms in addition to op-erators of hotels. But the same principles apply. To have a duty to collect and remit taxes under the ordinances, the OTAs would need to essentially "run" hotel rooms. While the OTAs engage in one aspect of running hotel rooms—reserving those rooms for customers—that does not mean they operate hotel rooms.

The district court granted summary judgment to the OTAs against the municipalities with this type of ordinance because the OTAs had no duty to collect or remit hotel occupancy taxes. That portion of the decision is affirmed.

---

[5] Bedford Park places the duty of collection and remittance solely on the owner of hotel or motel rooms. Arlington Heights and Schaumburg place the duty on owners, operators, and those with licenses to operate hotels.

### c. Engaged in the Business of Renting Hotel Rooms

Three of the ordinances—Rockford, Willowbrook, and Lombard—impose a tax squarely on those engaged in renting hotel rooms or engaged in the business of renting hotel rooms. The district court found that the OTAs were engaged in renting hotel rooms. But because Rockford and Willowbrook's ordinances only tax gross rental receipts, it granted summary judgment to the OTAs with respect to those municipalities. According to the district court, because the municipalities already received taxes on the rental rate, as set by the hotel, the OTAs were not required to collect and remit taxes on the extra fees they charge consumers. But as Lombard's ordinance did not specify that the tax was only on gross rental receipts, the district court granted it summary judgment.

None of the ordinances define "engaged in the business of renting" or "engaged in renting." To rent is "[t]o pay for the use of another's property." *Rent*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Lease*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("To grant the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration … ."). Thus, renting implies ownership and granting possession of property—here, hotel rooms. As discussed, the OTAs do not own hotels or hotel rooms and they cannot independently grant consumers access to hotel rooms. Therefore, they cannot rent hotel rooms to customers.

The question here is whether "engaged in the business" has the same meaning under these tax ordinances as it does in other contexts, like the products liability context, in which sellers are not held strictly liable unless they are engaged in the business of selling the defective product. *See Carollo v. Al*

*Warren Oil Co., Inc.*, 820 N.E.2d 994, 1002 (Ill. App. Ct. 2004). In that context, a seller is only engaged in the business of selling if he does it routinely or commercially. The OTAs do not rent hotel rooms, so of course they do not do so routinely or commercially. Thus, the OTAs are not engaged in the business of renting rooms and are not subject to these three ordinances. We affirm the grant of summary judgment to the OTAs against Rockford and Willowbrook. We reverse the district court's grant of summary judgment to Lombard and grant summary judgment to the OTAs.

### d. Hybrids

The last three ordinances are slightly more complicated, but the OTAs are not required to pay taxes to the municipalities under any of them. Des Plaines appears to tax all "persons engaged in the business of renting, leasing or letting rooms in a hotel or motel." Br. Appellants Sep. App. 302 But it also places the duty of keeping records on operators and the duty of filing returns and paying taxes to the city on owners. Warrenville's ordinance similarly imposes a tax on those engaged in the business of renting, but places a duty to pay on owners. Burr Ridge's ordinance includes language about both engaging in the business of renting and owners, operators, and managers. But as the OTAs are neither engaged in the business of renting nor owners or operators of hotels, they have no obligations regardless of how these ordinances are interpreted. The grant of summary judgment to the OTAs against Des Plaines, Warrenville, and Burr Ridge is affirmed.

### III.    *Conclusion*

The district court's grant of summary judgment to the OTAs against all but one municipality is AFFIRMED. The district court's grant of summary judgment to the Village of Lombard is REVERSED and summary judgment shall be entered in favor of the OTAs.