**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 29, 2018[*]
Decided May 31, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-2458

| | |
|---|---|
| ELPIDIO JUAREZ, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 16-cv-181-jdp |
| CAROL WALTER, et al., *Defendants-Appellees*. | James D. Peterson, *Chief Judge*. |

**O R D E R**

Elpidio Juarez, a Wisconsin state prisoner, has sued two prison nurses under 42 U.S.C. § 1983 for violating the Eighth Amendment. Juarez contends that one nurse failed to warn him of the potential side effects of a drug and the other inadequately responded to his complaint of dizziness from the drug. The district court entered summary judgment for the defendants. Because the undisputed evidence shows that

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

neither nurse was deliberately indifferent to Juarez's risk of harm from the drug, they did not violate the Eighth Amendment. We therefore affirm the judgment.

In 2015, Juarez saw a neurologist for a hand tremor. The neurologist prescribed Gabapentin to him because he had been unable to tolerate the side effects of two previously prescribed drugs. The parties dispute whether the neurologist told Juarez about potential side effects from Gabapentin. Because we are reviewing the entry of summary judgment against Juarez, we construe the record on this and other points in his favor, *Vill. of Bedford Park v. Expedia, Inc.*, 876 F.3d 296, 302 (7th Cir. 2017), and assume that the neurologist did not warn him. When the medication arrived at the prison, Carol Walter, a nurse at the prison, told Juarez that he could start taking it, which he did. She also did not tell Juarez about any of the drug's side effects, even though it is the prison's policy for her to do so, and Juarez did not ask about any.

Before Juarez took his midday dose of Gabapentin the next day, he told another nurse, Jean Felber, that he had been feeling dizzy all morning after taking his second dose. She replied, "Oh, that's just part of the side effects, you just need to drink more liquids." After so advising him, she told Juarez to return to his housing unit. She did not examine him or otherwise caution him about the drug.

An accident occurred later that day. After Juarez slept all afternoon, he woke, stood, and felt groggy. A few minutes later, Juarez left his cell tier to go to the dayroom. He approached the top of some stairs, and he either lost consciousness or became dizzy and fell down them. Juarez was hospitalized and diagnosed with "[m]ultiple contusions including a head injury without apparent concussion" and right shoulder pain consistent with "shoulder strain or contusion." His doctor wrote that the dizziness could have been a result of the Gabapentin and advised Juarez to stop taking it. The doctor prescribed a muscle relaxer for back spasms and a pain medication.

Juarez blames the nursing staff for his fall. When he saw Felber the next day, he told her, "I told you that that medication was making me dizzy and ill!" She responded, "I know, and I'm sorry." To assist Juarez's recovery, about two weeks after his fall the prison restricted Juarez to a lower tier (to avoid stairs) and to a lower bunk. At his deposition, Juarez admitted that he would have taken Gabapentin even if the neurologist or her medical staff had given him a sheet of paper listing its potential side effects.

This litigation followed, and eventually the district judge entered summary judgment for the defendants. The judge reasoned that no reasonable jury could conclude that the defendants recklessly exposed Juarez to a substantial risk of harm from Gabapentin. Although some risk of injury materialized in this case, the district judge explained, that fact alone did not mean that Walter and Felber deliberately ignored Juarez's medical safety.

On appeal, Juarez maintains that Walter and Felber violated the Eighth Amendment by deliberately disregarding his medical safety. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). He complains that Walter recklessly did not warn him about Gabapentin's possible side effects and that Felber culpably did not halt his intake of the drug or examine him at the first sign of the side effect of dizziness.

Juarez's claim against Walter fails because he has not presented evidence that any advice from her about Gabapentin's side effects would have prevented Juarez's fall. Section 1983 is a species of tort liability. *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017). This means that Juarez cannot recover if Walter's silence about Gabapentin's side effects did not cause his injury. *See Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012). But Juarez swears that he would have taken Gabapentin even if he had been advised of the potential side effects. Thus, no advice from Walter about side effects would have prevented the next day's accident.

Moreover, the two nurses permissibly relied on the neurologist's professional opinion that the benefits of the Gabapentin in resolving his hand tremors outweighed the risks of its side effects. Indeed, medical staff who refuse to rely on a specialist's professional judgment expose themselves to a charge that their *refusal* reflects deliberate indifference. *See Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct. 1578 (2017). Juarez replies that once he told Felber that he felt dizzy, she should have done something more. But she did—she instructed him to drink liquids. Juarez does not say whether he followed this advice. But even if he did and the dizziness nonetheless returned, Juarez has not offered evidence that Felber's advice to drink liquids while he remained on Gabapentin was reckless. To be deliberately indifferent, Felber must have known about and disregarded "an *excessive* risk to inmate health or safety." *Farmer*, 511 U.S. at 837 (emphasis added). Juarez has not quantified the risk of dizziness that Gabapentin posed to him when fully hydrated. Without that quantification, no reasonable jury could find that the nurses ignored an *excessive* risk to Juarez's health. *See id.*

Finally Juarez argues that, in addition to advising him to take fluids, Felber should have also warned him to be careful or restricted him from using the stairs. But this is an argument that Felber was negligent, and negligence is not enough to succeed on a claim for deliberate indifference. *Minneci v. Pollard*, 565 U.S. 118, 130 (2012).

AFFIRMED